WALLACE, Judge.
 

 Based on a claim by Patrick H. King (the Former Husband) that a supportive relationship existed between Cynthia L. King (the Former Wife) and the man with whom she resided, the circuit court entered an order that reduced the Former Husband’s monthly alimony payments. Because the supportive relationship predated the parties’ divorce and the alimony award, we hold that the circuit court erred in reducing the amount of the Former Husband’s alimony obligation.
 

 I. THE FACTS AND PROCEDURAL BACKGROUND
 

 The parties were divorced in 2004 after nineteen years of marriage. They had one child, a daughter, who was born in 1991. At the time of the divorce, a company in which the Former Husband owned an interest employed him as an executive. The Former Husband’s monthly gross income was $11,668; his monthly net income was $8456. The Former Wife was a homemaker for most of the marriage, and she reported no income on her financial affidavit. In a marital settlement agreement, the Former Husband agreed to pay the Former Wife $3100 per month in permanent periodic alimony.
 

 In 2009, the same year that the parties’ daughter reached the age of majority, the Former Husband filed a supplemental petition for modification or termination of alimony. The sole basis for the relief requested was that the Former Wife was “cohabitating with a romantic partner in a supportive relationship.”
 

 After the Former Husband filed his petition, each of the parties filed an updated financial affidavit. The Former Husband claimed a monthly gross income of $30,999 and a monthly net income of $16,309 after the payment of alimony. The Former Husband also disclosed that his gross in
 
 *1127
 
 come for 2007 was $371,998. Despite the substantial increase in the Former Husband’s income since the dissolution of marriage, the Former Wife did not file a coun-terpetition for an increase in alimony.
 

 The Former Wife reported a monthly gross income of $5100 and a monthly net income of $3905. The Former Wife’s income was comprised of her $3100 alimony payments, $1000 she earned selling items on the Internet, and a $1000 contribution from Ron Doss, the man with whom she was cohabiting.
 

 In January 2010, the circuit court conducted an evidentiary hearing on the Former Husband’s petition. At the time of the final hearing, the Former Wife was residing at the same residence in Tampa where she had been living when the parties divorced. The Former Wife testified that Mr. Doss has been living in her home since 2002, substantially before the entry of the final judgment of dissolution of marriage.
 

 II. THE CIRCUIT COURT’S RULING
 

 After the conclusion of the hearing, the circuit court entered a final judgment that included the following pertinent findings of fact:
 

 4. At the time of the entry of the Final Judgment of Dissolution of Marriage, on August 6, 2004, [the Former Husband] was knowledgeable that [the Former Wife] and Mr. Doss were eoha-bitating and had been cohabitating before the entry of the Final Judgment of Dissolution of Marriage. The parties’ minor daughter resided with the Former Wife and Mr. Doss before the parties[’] divorce and since the parties’ divorce.
 

 [[Image here]]
 

 8. The child of the marriage, a daughter, has now reached the age of majority. The child, who also has a child of her own, both live with the Former Wife. The child of the marriage is now attending college. The Former Husband pays for the child’s college education, purchased a car for the child, and pays the child’s health insurance. The Former Husband also paid the health insurance for the new grandchild through the month of February, 2010.
 

 9. Without the $3,100 monthly alimony payment from the Former Husband, the Former Wife testified that she cannot afford to make her mortgage payments on her residence.
 
 [1]
 

 With respect to the factors set forth in section 61.14(l)(b)(2), Florida Statutes (2008), the trial court found in pertinent part:
 

 b. The Former Wife and Mr. Doss have resided together in the Former Wife’s permanent place of abode since 2002, before the entry of the Final Judgment in this case.
 

 c. The Former Wife and Mr. Doss have pooled their financial resources. Mr. Doss earns approximately $1000 per month, as does the Former Wife. Mr. Doss gives his money to the Former Wife, who deposits the money in her bank account and pays their respective bills from the money.
 

 Based on these and other findings, the circuit court ruled “that the Former Wife and Mr. Doss are in a supportive relationship as contemplated by Florida Statute 61.14(l)(b) and that their relationship predated the entry of the Final Judgment of Dissolution.” The circuit court considered and rejected the Former Wife’s argument that section 61.14(l)(b) was applicable only to a supportive relationship that began
 
 after
 
 the entry of the final judgment of dissolution of marriage.
 

 
 *1128
 
 Based on its findings of fact and these rulings, the circuit court reduced the Former Husband’s alimony obligation from $3100 per month to $2100 per month retroactive to February 1, 2009. The Former Husband appealed the final judgment, and the Former Wife cross-appealed.
 
 [2]
 

 III. THE APPLICABLE STATUTE
 

 The parties’ arguments center on the proper interpretation and application of section 61.14(l)(b). Subsection (b) of section 61.14(1) is sometimes referred to as “the cohabitation statute.”
 
 [3]
 
 The statute provides as follows:
 

 (b)(1) The court may reduce or terminate an award of alimony upon specific written findings by the court that since the granting of a divorce and the award of alimony a supportive relationship has existed between the obligee and a person with whom the obligee resides. On the issue of whether alimony should be reduced or terminated under this paragraph, the burden is on the obligor to prove by a preponderance of the evidence that a supportive relationship exists.
 

 (2) In determining whether an existing award of alimony should be reduced or terminated because of an alleged supportive relationship between an obligee and a person who is not related by consanguinity or affinity and with whom the obligee resides, the court shall elicit the nature and extent of the relationship in question. The court shall give consideration, without limitation, to circumstances, including, but not limited to, the following, in determining the relationship of an obligee to another person:
 

 (a) The extent to which the obligee and the other person have held themselves out as a married couple by engaging in conduct such as using the same last name, using a common mailing address, referring to each other in terms such as “my husband” or “my wife,” or otherwise conducting themselves in a manner that evidences a permanent supportive relationship.
 

 (b) The period of time that the obli-gee has resided with the other person in a permanent place of abode.
 

 (c) The extent to which the obligee and the other person have pooled their assets or income or otherwise exhibited financial interdependence.
 

 (d) The extent to which the obligee or the other person has supported the other, in whole or in part.
 

 (e) The extent to which the obligee or the other person has performed valuable services for the other.
 

 (f) The extent to which the obligee or the other person has performed valuable sendees for the other’s company or employer.
 

 (g) Whether the obligee and the other person have worked together to create or enhance anything of value.
 

 (h) Whether the obligee and the other person have jointly contributed to the purchase of any real or personal property.
 

 (i) Evidence in support of a claim that the obligee and the other person have an
 
 *1129
 
 express agreement regarding property sharing or support.
 

 (j) Evidence in support of a claim that the obligee and the other person have an implied agreement regarding property sharing or support.
 

 (k) Whether the obligee and the other person have provided support to the children of one another, regardless of any legal duty to do so.
 

 (3) This paragraph does not abrogate the requirement that every marriage in this state be solemnized under a license, does not recognize a common law marriage as valid, and does not recognize a de facto marriage. This paragraph recognizes only that relationships do exist that provide economic support equivalent to a marriage and that alimony terminable on remarriage may be reduced or terminated upon the establishment of equivalent equitable circumstances as described in this paragraph. The existence of a conjugal relationship, though it may be relevant to the nature and extent of the relationship, is not necessary for the application of the provisions of this paragraph.
 

 The legislature added subsection (b) to section 61.14(1) in 2005. Ch. 2005-168, § 1, at 1726-28, Laws of Fla.
 

 To address a petition for the reduction or termination of alimony under section 61.14(l)(b), the circuit court must employ an analysis that may involve four steps. First, the circuit court must “elicit the nature and extent of the relationship in question.” § 61.14(l)(b)(2). To accomplish this task, the circuit court must consider and make findings concerning the factors listed in section 61.14(l)(b)(2) and any other pertinent circumstances.
 
 Buxton v. Buxton,
 
 963 So.2d 950, 951-53 (Fla. 2d DCA 2007). In the second step, based on its findings, the circuit court must determine whether the facts establish a supportive relationship.
 
 Id.
 
 If the circuit court concludes that a supportive relationship does exist, then it must decide whether to reduce or terminate the alimony obligation.
 
 Id.
 
 at 952-53. In the third step, the circuit court must consider the relevant economic factors for determining an award of separate maintenance or alimony outlined in section 61.08(2).
 
 Buxton,
 
 963 So.2d at 955-56. In the fourth step, having considered the relevant economic factors, the circuit court must determine “whether to reduce or terminate the Former Wife’s alimony and, if to reduce it, by how much.”
 
 Id.
 
 at 956. Here, the circuit court followed this four-step analysis in reaching its decision.
 

 IY. THE STANDARD OF REVIEW
 

 In a case under section 61.14(l)(b), appellate review of the circuit court’s factual findings is limited to determining whether they are supported by competent, substantial evidence.
 
 Buxton,
 
 963 So.2d at 953. However, review of the circuit court’s interpretation of the statute and its legal conclusion concerning whether a supportive relationship exists is de novo.
 
 Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc.,
 
 982 So.2d 628, 632 (Fla.2008);
 
 Buxton,
 
 963 So.2d at 953. If the circuit court decides that a supportive relationship exists, appellate review of the circuit court’s decision to reduce or terminate alimony is for abuse of discretion.
 
 Id.
 

 V. THE PARTIES’ ARGUMENTS
 

 On his direct appeal, the Former Husband argues that the $1000 per month reduction in his alimony obligation is insufficient. The Former Husband supports his position by contending that the circuit court failed to give adequate consideration to sections 61.08(2)(d) (financial resources), (e) (“when applicable, the time necessary
 
 *1130
 
 ... to acquire sufficient education or training”), and (g) (all sources of income). After a thorough review of the record, we conclude that the Former Husband’s arguments are without merit and do not warrant further discussion. Furthermore, our disposition of the Former Wife’s cross-appeal moots the Former Husband’s arguments.
 

 The Former Wife makes two separate arguments. First, she focuses on the language of section 61.14(l)(b)(l) providing that the circuit court “may reduce or terminate an award of alimony upon specific written findings by the court that
 
 since
 
 the granting of a divorce and the award of alimony a supportive relationship has existed.” (Emphasis added.) The Former Wife argues that this portion of the statute authorizes the reduction or termination of alimony only if the supportive relationship began after the divorce was granted and alimony was awarded. The circuit court found that the Former Wife’s supportive relationship with Mr. Doss predated the entry of the final judgment of dissolution of marriage and that the Former Husband knew about the relationship. The Former Wife asserts that because her supportive relationship with Mr. Doss preceded the final judgment of dissolution of marriage, the circuit court was not authorized to reduce or to terminate her alimony under section 61.14(l)(b).
 

 Alternatively, the Former Wife argues that her substantial need for alimony continues despite the supportive relationship and that the circuit court erred in reducing the payments necessary for her support. Because we agree with the Former Wife’s first argument, we need not address her second one.
 
 [4]
 

 VI. DISCUSSION
 

 Based on the plain language of the statute, we conclude that a supportive relationship that predates the divorce and the award of alimony does not authorize a reduction or termination of alimony under section 61.14(l)(b). “[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, ... the statute must be given its plain and obvious meaning.”
 
 Holly v. Auld,
 
 450 So.2d 217, 219 (Fla.1984) (quoting
 
 A.R. Douglass, Inc. v. McRainey,
 
 102 Fla. 1141, 137 So. 157, 159 (1931)). We must “give statutory language its plain and ordinary meaning, unless the words are defined in the statute or by the clear intent of the legislature.”
 
 Green v. State,
 
 604 So.2d 471, 473 (Fla.1992) (citing
 
 Se. Fisheries Ass’n v. Dep’t of Natural Res.,
 
 453 So.2d 1351 (Fla.1984)). “If necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary.”
 
 Id.
 
 (citing
 
 Gardner v. Johnson,
 
 451 So.2d 477 (Fla.1984)).
 

 In accordance with section 61.14(l)(b), the reduction or termination of alimony based on the existence of a supportive relationship between the obligee and another person is authorized only if the relationship has existed
 
 “since
 
 the granting of a divorce and the award of alimony.” (Emphasis added.) As used in the context of the statute, the word “since” may be defined as “[d]uring the period subsequent to the time when.”
 
 The American Heritage Dictionary of the English Language
 
 1624 (4th ed. 2004). Thus the plain language of the statute does not authorize the circuit court to reduce or terminate alimony to the obligee based on a supportive relationship unless the relationship began
 
 after
 
 the divorce and the award of alimony.
 

 
 *1131
 
 The conclusion that we reach based on the plain language of the statute is confirmed by the placement of subsection (b), the so-called cohabitation statute, in the overall scheme of chapter 61. When the legislature enacted subsection (b) in 2005, it added the new law to section 61.14(1). Ch. 2005-168, § 1, at 1726-28, Laws of Fla. The subject of section 61.14(1) is the modification of support, maintenance, or alimony agreements or orders. The placement of subsection (b) in the statutory section that addresses the modification of alimony based on a change in circumstances cannot be accidental. The concept of supportive relationship involves — at its core — a change in circumstances.
 
 Baumann v. Baumann,
 
 22 So.3d 719, 720-21 (Fla. 2d DCA 2009). Accordingly, we construe subsection (b) in pari materia with section 61.14(l)(a), which addresses the modification of alimony generally.
 

 “It is axiomatic that all parts of a statute must be read
 
 together
 
 in order to achieve a consistent whole.”
 
 Forsythe v. Longboat Key Beach Erosion Control Dist.,
 
 604 So.2d 452, 455 (Fla.1992). “Where possible, courts must give full effect to
 
 all
 
 statutory provisions and construe related statutory provisions in harmony with one another.”
 
 Id.
 
 Where, as in this case,
 

 the legislation dealing with a particular subject consists of a system of related general provisions indicative of a settled policy, new enactments of a fragmentary nature on that subject are to be taken as intended to fit into the existing system and to be carried into effect conformably to it, excepting as a different purpose is plainly shown.
 

 United States v. Jefferson Electric Mfg. Co.,
 
 291 U.S. 386, 396, 54 S.Ct. 443, 78 L.Ed. 859 (1934). The reading of subsection (b) of the statute in pari materia with the remainder of section 61.14(1) is particularly appropriate because the 2005 amendment adding subsection (b) merely codifies a special instance where the reduction or termination of alimony may be warranted.
 

 In pertinent part, section 61.14(l)(a) authorizes a modification of alimony when “the circumstances or the financial ability of either party changes.” There are three fundamental requirements for obtaining a modification of alimony under section 61.14(l)(a):
 

 First, there must be a substantial change in circumstances. Second, the change was not contemplated at the time of final judgment of dissolution. Third, the change is sufficient, material, involuntary, and permanent in nature.
 

 Pimm v. Pimm,
 
 601 So.2d 534, 536 (Fla.1992) (citations omitted). Thus a modification of alimony “can only be based on changed conditions occurring since entry of the prior award or modification thereto.”
 
 Ferguson v. Ferguson,
 
 921 So.2d 796, 797 (Fla. 5th DCA 2006) (citing
 
 Hosford v. Hosford,
 
 362 So.2d 973 (Fla. 1st DCA 1978) and § 61.14, Fla. Stat. (2004)). Reading subsection (l)(b) of the statute in pari materia with subsection (l)(a) compels the conclusion that a supportive relationship does not authorize a reduction or termination of alimony unless the relationship began after the divorce and after the alimony award. Otherwise, the statutory requirement of a change in circumstances is not satisfied.
 
 [5]
 

 
 *1132
 
 VII. CONCLUSION
 

 On the Former Husband’s direct appeal, we find no error in the circuit court’s decision to limit the reduction in the amount of the monthly alimony obligation to $1000. However, our disposition of the Former Wife’s cross-appeal moots the single issue raised in the Former Husband’s direct appeal. On the cross-appeal, we hold that because the supportive relationship under review predated the divorce and the award of alimony, the circuit court was not authorized to reduce or terminate the Former Wife’s alimony payments under section 61.14(l)(b). It follows that the circuit court erred in reducing the Former Husband’s monthly alimony obligation from $3100 to $2100.
 

 For these reasons, we reverse the final judgment under review. On remand, the circuit court shall enter an order directing the Former Husband to resume making his monthly alimony payments to the Former Wife in the amount of $3100. The circuit court shall also order the Former Husband to pay to the Former Wife the shortage in the monthly alimony payments unpaid since the reduction in the monthly amount became effective. If necessary, the circuit court may take additional evidence and entertain submissions from the parties concerning the amount due and an appropriate schedule for the Former Husband to satisfy his unpaid obligation.
 

 Reversed and remanded with directions.
 

 CASANUEVA and LaROSE, JJ., Concur.
 

 [1]
 

 1. The Former Wife testified that her monthly mortgage payment was $2832.50.
 

 [2]
 

 . We note that the circuit court entered its final judgment on March 23, 2010. The substantial delay in processing this appeal is attributable — at least in part — to complications arising from the death of the appellate attorney initially retained by the Former Wife.
 

 [3]
 

 .
 
 See
 
 Odette Marie Bendeck,
 
 Florida's “Cohabitation” Statute: The Revolution That Wasn’t,
 
 82 Fla. Bar J. 95, 95 (June 2008) (observing that the reference to cohabitation is a misnomer and is also significantly misleading).
 

 [4]
 

 . The Former Wife does not argue that the circuit court erred in finding that a supportive relationship between Mr. Doss and her existed. Thus we need not address this issue.
 

 [5]
 

 . It is possible that the nature of a supportive relationship that predates the divorce and the award of alimony may change. For example, the person with whom the obligee resides may make a greater or a lesser contribution to the obligee, resulting in a substantial change in the circumstances of the supportive relationship. In this case, the circuit court made no finding that such a change had occurred.