963 So.2d 950 (2007)
Kenneth B. BUXTON, Appellant,
v.
Bonnie BUXTON, Appellee.
No. 2D06-5358.
District Court of Appeal of Florida, Second District.
September 5, 2007.
Virginia R. Vetter, Tampa, for Appellant.
*951 M. Katherine Ramers of M. Katherine Ramers, P.A., Dunedin, for Appellee.
STRINGER, Judge.
Kenneth Buxton (the Former Husband) appeals from the trial court's order denying his motion to reduce or terminate his alimony obligation to Bonnie Buxton (the Former Wife), based on her ten-year cohabitation with another man. The trial court denied the Former Husband's motion after concluding that the Former Wife and her long-term companion, Virgil Wasco, are not engaged in a "supportive relationship" as that phrase is used in section 61.14(1)(b), Florida Statutes (2005). Because the trial court's conclusion is not supported by its factual findings, we reverse and remand for further proceedings. In addition, because there is little case law applying section 61.14(1)(b), we address the statute and the issues raised by the parties in some detail.

Section 61.14(1)(b)
Prior to the enactment of section 61.14(1)(b), the courts allowed a payor spouse to seek modification of alimony under section 61.14(a) when the recipient spouse was cohabiting with another. See, e.g., Reno v. Reno, 884 So.2d 462 (Fla. 4th DCA 2004); Bridges v. Bridges, 842 So.2d 983 (Fla. 1st DCA 2003); Springstead v. Springstead, 717 So.2d 203 (Fla. 5th DCA 1998); DePoorter v. DePoorter, 509 So.2d 1141 (Fla. 1st DCA 1987). In those cases, the fact that a recipient spouse was cohabiting with another was not, by itself, sufficient to allow modification of alimony. Reno, 884 So.2d at 465; Springstead, 717 So.2d at 204; DePoorter, 509 So.2d at 1144. Instead, modification required evidence of both cohabitation and a change in circumstances concerning the recipient spouse's needs. Rahn v. Rahn, 768 So.2d 1102, 1104 (Fla. 2d DCA 2000); Reno, 884 So.2d at 465; Springstead, 717 So.2d at 204.
In 2005, the legislature enacted section 61.14(b) to "provide an alternate method to a court to reduce or terminate alimony, without first having to find that there has been a change in financial circumstance, as is the case in current law." Sen. Staff Analysis, C.B./S.B. 152 at 12 (Feb. 25, 2005). As enacted, section 61.14(1)(b)(1) permits the trial court to reduce or terminate alimony if it makes a specific written finding that the recipient spouse has entered into a "supportive relationship" with another person. The statute does not provide an explicit definition of the term "supportive relationship." However, the legislature explained its intent in using this term by stating that it recognized "that relationships do exist that provide economic support equivalent to a marriage and that alimony terminable on remarriage may be reduced or terminated upon the establishment of equivalent equitable circumstances as described in this paragraph." § 61.14(1)(b)(3).
To determine whether a "supportive relationship" exists under the statute, the trial court is required to "elicit the nature and extent of the relationship in question." § 61.14(1)(b)(2). While the trial court is required to consider all evidence relevant to the nature and extent of the relationship, the statute provides a nonexclusive list of eleven factors that the trial court must consider:
a. The extent to which the obligee and the other person have held themselves out as a married couple by engaging in conduct such as using the same last name, using a common mailing address, referring to each other in terms such as "my husband" or "my wife," or otherwise conducting themselves in a manner that evidences a permanent supportive relationship.

*952 b. The period of time that the obligee has resided with the other person in a permanent place of abode.
c. The extent to which the obligee and the other person have pooled their assets or income or otherwise exhibited financial interdependence.
d. The extent to which the obligee or the other person has supported the other, in whole or in part.
e. The extent to which the obligee or the other person has performed valuable services for the other.
f. The extent to which the obligee or the other person has performed valuable services for the other's company or employer.
g. Whether the obligee and the other person have worked together to create or enhance anything of value.
h. Whether the obligee and the other person have jointly contributed to the purchase of any real or personal property.
i. Evidence in support of a claim that the obligee and the other person have an express agreement regarding property sharing or support.
j. Evidence in support of a claim that the obligee and the other person have an implied agreement regarding property sharing or support.
k. Whether the obligee and the other person have provided support to the children of one another, regardless of any legal duty to do so.
Id. In addition, section 61.14(1)(b)(3) permits the trial court to consider whether the relationship is a conjugal one. If, after considering all the evidence presented, the trial court concludes that a "supportive relationship" exists, it may either reduce or terminate the alimony obligation.

Facts of this Case
The Former Husband and the Former Wife divorced in 1993. At the hearing on the Former Husband's petition, the evidence established that the Former Wife and Wasco have been living together for the past ten years. They live in a house that the Former Wife owned before the start of their relationship. Wasco owns a condominium, which he owned before the start of the relationship, but it is leased to tenants. Wasco's driver's license and voter registration card both list the shared residence as his permanent address. The Former Wife and Wasco share a bed as well as a residence. They also share the household chores, maintenance, and upkeep.
Both Wasco and the Former Wife testified that Wasco pays "rent" of $575 per month to the Former Wife; however, they agreed that the amount of the rent actually paid fluctuates each month. For example, the Former Wife pays Wasco to mow her lawn by deducting $45 from the "rent" each time he mows. She testified that if she had to hire someone to mow the yard, it would cost approximately $65 each time. In addition, the Former Wife testified that she would sometimes have Wasco purchase items for her at Sam's Club, and she would deduct the amount of those purchases from the "rent." Wasco pays a portion of the cable bill. Other than that one bill, the Former Wife pays all of the household expenses, including the mortgage, property taxes, and utilities, from her funds, which include the "rent" she receives from Wasco. While the parties used the term "rent" for these payments at the evidentiary hearing, in the ten years that Wasco has paid "rent" to the Former Wife, she never claimed these payments as rental income for tax purposes until after the Former Husband filed this petition.
*953 The Former Wife and Wasco both testified that they do not have any joint bank accounts. However, when they go grocery shopping together, they each usually pay half of the bill. If one goes shopping without the other, whoever is at the store pays and they "work it out later." When they go out to eat, they do not request separate checks or split the bill. Instead, Wasco pays one time and the Former Wife pays the next time. Wasco testified that he has attended the Former Wife's family functions as her "boyfriend" for the past ten years. When he and the Former Wife travel together, they each pay their own airfare; however, they do not necessarily split the other expenses "down the middle." Instead, the Former Wife testified that how other trip expenses are shared "depend[s] on the trip and depend[s] on the circumstances."
After considering this evidence, the trial court made an explicit factual finding that Wasco provides both financial and emotional support to the Former Wife. Despite this finding, however, the trial court concluded that the Former Wife and Wasco are not in a "supportive relationship" for two reasons: first, that the Former Wife and Wasco do not have a joint bank account and thus have not pooled their assets; and second, that because the Former Wife is employed, Wasco is not fully supporting her. Based on this conclusion, the trial court denied the Former Husband's motion to reduce or terminate alimony, and he now appeals.

Standard of Review
As an initial matter, we address the proper standard of review of a trial court's decision under section 61.14(1)(b). Based on the statutory framework, we believe that the decision made by a trial court under this section presents a mixed question of law and fact, which calls for a mixed standard of review.
The trial court's first task when considering a petition under section 61.14(1)(b) is to make factual findings based on the evidence presented by the parties. Based on those factual findings, the trial court then reaches a legal conclusion as to whether those facts establish a "supportive relationship." If the trial court concludes that a "supportive relationship" exists, the trial court has the discretion to reduce or terminate the alimony obligation. In a situation such as this, we review the trial court's factual findings to determine whether they are supported by competent, substantial evidence. We review the trial court's conclusion concerning whether those facts establish a "supportive relationship" de novo. If the trial court determines that a "supportive relationship" exists, we review the trial court's decision to reduce or terminate alimony for abuse of discretion.
This standard of review is the same as that used in other contexts that employ a similar analysis. For example, section 61.075, which deals with equitable distribution, requires the trial court to identify marital assets and liabilities and distribute them equitably. To do so, the trial court must first consider evidence and make factual findings as to the character of the asset or liability. These findings are reviewed for clear error. Farrior v. Farrior, 736 So.2d 1177, 1179 (Fla.1999). Based on its factual findings concerning the character of the asset or liability, the trial court then reaches a legal conclusion as to whether the asset or liability constitutes a "marital asset" or "marital liability" as defined. This legal conclusion is reviewed de novo. Id. Assuming an asset or liability is determined to be marital, the trial court has broad discretion in how it distributes that asset or liability. Cory v. Cory, 536 So.2d 1063, 1064 (Fla. 2d DCA 1988). We can see no relevant differences between *954 the analysis required under section 61.075 and the analysis required under section 61.14(1)(b) that would dictate a different standard of review.

"Supportive Relationship" in this Case
Applying this standard of review to this appeal, we find that while most of the trial court's findings are supported by competent, substantial evidence, the finding that the Former Wife and Wasco do not pool their assets for living expenses is not. It is true that the Former Wife and Wasco have not commingled their liquid assets in a joint bank account. However, the evidence shows that the Former Wife and Wasco do pool their assets for purposes of living expenses even in the absence of a joint bank account. When they dine out, they do not request separate checks to each pay for their own meals. When they go to the grocery store, each does not pay for only the food he or she will eat. They do not always evenly share the cost of their travels. More importantly, the Former Wife never claimed Wasco's rent payment as "income" for tax purposes until after the Former Husband filed this petition. Rather, it was simply his contribution to the joint expenses incurred in running the household. Given this evidence, the trial court's finding that the Former Wife and Wasco have not pooled their assets is not supported by the evidence.
In addition, given the factual findings made by the trial court and the totality of the evidence presented at the hearing, we hold that the trial court erred in concluding that the Former Wife and Wasco are not in a "supportive relationship." The trial court specifically found that Wasco is providing economic and financial support to the Former Wife. The facts presented at the hearing show that the Former Wife and Wasco are in a long-term, committed relationship that provides both economic and social support equivalent to that of a marriage. Under these circumstances, the evidence established the existence of a "supportive relationship" as contemplated by section 61.14(1)(b).
At the hearing, the trial court concluded that the Former Wife and Wasco were not engaged in a "supportive relationship" because Wasco was not fully supporting the Former Wife. However, nothing in section 61.14(1)(b) requires the recipient spouse to be completely dependent on the cohabitant before a "supportive relationship" can exist. Certainly, if a payor spouse establishes that the recipient spouse is being totally supported by another, a "supportive relationship" likely exists. See, e.g., Zeballos v. Zeballos, 951 So.2d 972 (Fla. 4th DCA 2007) (affirming the conclusion that a "supportive relationship" existed when the former wife had no income and did not work outside the home and her live-in companion paid all of their joint expenses and supported the former wife's children). However, section 61.14(1)(b)(2)(d) specifically requires the trial court to consider the extent to which the parties have supported each other "in whole or in part."
In determining what level of partial support is required to establish a "supportive relationship," we turn to prior case law dealing with cohabitation for guidance as to what constitutes "support." In those cases, the question of whether the parties were supporting each other turned on whether either party benefited financially from the contributions of the other. For example, in Long v. Long, 622 So.2d 622, 624 (Fla. 2d DCA 1993), this court held that the former wife was not being supported by her live-in companion because his contributions to the household barely covered his groceries and his share of the utilities. Moreover, there was no evidence that the former wife's expenses had been *955 reduced by her companion's work around the house. Id.
In contrast, in Pill v. Pill, 583 So.2d 1114, 1114 (Fla. 5th DCA 1991), the court affirmed a reduction in alimony based on the trial court's finding that the former wife's live-in companion was partially supporting her by providing yard work, pool cleaning, house and pool maintenance, and automobile maintenance in addition to paying rent. Additionally, in an earlier case involving the same parties, the court noted that because the former wife was paying the mortgage, gas bills, electric bills, telephone bills, and water and sewer bills without a financial contribution from her live-in companion, she was partially supporting him. Pill v. Pill, 559 So.2d 364, 364 n. 1 (Fla. 5th DCA 1990).
Here, unlike in Long, Wasco's "rent" covers significantly more than his share of the groceries and utilities. Further, like in Pill, Wasco is providing yard work at a reduced rate and assisting with household maintenance and upkeep. Thus, under this pre-enactment case law, the evidence would have supported a conclusion that Wasco was partially supporting the Former Wife, which could warrant a reduction of her alimony.
That said, however, these pre-enactment cases focus solely on the issue of financial support. Under section 61.14(1)(b)(2), financial support is but one factor to be considered in determining whether a "supportive relationship" exists. In addition to the financial issues, the length and nature of the live-in relationship are significant factors for the trial court to consider. We do not believe that the legislature intended for every roommate or brief live-in relationship to trigger a reduction in or termination of alimony. Instead, only those relationships that are equitably equivalent to a remarriage warrant a reduction or termination of alimony. While consideration of financial support is an important part of that analysis, that factor alone does not define whether a "supportive relationship" exists.
Here, the evidence shows that the Former Wife and Wasco have engaged in a ten-plus-year relationship in which they share a house, a bed, all household chores, and all household expenses. Both their social lives and their living expenses are interdependent. The lone fact militating against concluding that a "supportive relationship" exists is the lack of a joint bank account. However, this one factor is insufficient to outweigh the other evidence showing that the relationship is the equitable equivalent of a remarriage. Accordingly, we hold that the trial court erred in concluding that a "supportive relationship" does not exist, and we remand for further proceedings.

Proceedings on Remand
Because we are holding that a supportive relationship exists, the sole question for the trial court to consider on remand is whether to reduce or terminate the Former Husband's alimony obligation. We recognize that the legislative history of section 61.14(1)(b) seems to indicate that the trial court does not need to consider the Former Wife's need for the alimony in reaching this decision. See Sen. Staff Analysis, C.B./S.B. 152 at 12 (Feb. 25, 2005). However, the language of the statute does not effectuate this intent.
Section 61.14(1)(b)(1) permits the trial court to reduce or terminate alimony if a "supportive relationship" exists, but it provides no guidance to the trial court concerning how to exercise its discretion should it decide to do so. Other courts have required the trial court to apply the provisions of section 61.08(2), which lists the factors the trial court must consider when determining an award of alimony, when modifying alimony under section *956 61.14. Donoff v. Donoff, 940 So.2d 1221, 1223 (Fla. 4th DCA 2006); Mirsky v. Mirsky, 474 So.2d 9, 9 (Fla. 5th DCA 1985); see also Bagley v. Bagley, 948 So.2d 841, 841 (Fla. 1st DCA 2007). As the Donoff court explained,
[I]t is apparent that the legislature has used specified "factors" or "circumstances" in chapter 61 to create standards governing the exercise of trial court discretion. These section 61.08(2) factors operate to direct and circumscribe all awards of alimony, thereby making outcomes more predictable. Nothing in any statute purports to eliminate these "relevant economic factors" when modifying alimony under section 61.14. Indeed, section 61.08(2) specifies that it applies whenever the court is "determining a proper award of alimony" under the statute.
Donoff, 940 So.2d at 1223.
Our review of the applicable statutes leads us to agree with the First, Fourth, and Fifth Districts that section 61.08(2) applies to modification proceedings under section 61.14(1)(b). Despite the legislature's stated intent, nothing in section 61.14(1)(b) states that section 61.08(2) is inapplicable. Accordingly, on remand, the trial court must consider evidence on all of the factors listed in section 61.08(2) in determining whether to reduce or terminate the Former Wife's alimony and, if to reduce it, by how much.
Reversed and remanded for further proceedings.
KELLY, J., and MORELAND, DIANA, Associate Judge, Concur.