DAVIDSON, LISA, Associate Judge.
These former spouses divorced in 1992. At that time, the trial court judge awarded the former wife $2,775 per month as permanent periodic alimony. In 2002, the former wife began cohabiting with James Stewart. One year later, the parties consented to an agreed order reducing alimony to $1,550 per month. Two years after that, the former husband brought this proceeding to reduce or terminate his alimony obligation, citing the recent enactment of section 61.14(l)(b), Florida Statutes (2005). The former wife countered with a request to return the amount of alimony to its original level of $2,775 per month. The trial court judge entered a final order denying termination and any reduction of alimony and granting the former wife’s request.
In 2005, the Florida Legislature enacted section 61.14(l)(b) which permits a court to reduce or terminate an award of alimony “upon specific written findings by the court that since the granting of a divorce and the award of alimony a supportive relationship has existed between the obli-gee and a person with whom the obligee resides.” “Supportive relationship” is not defined in the statute but the purpose of the statute is summarized as follows:
This paragraph does not abrogate the requirement that every marriage in this state be solemnized under a license, does not recognize a common law marriage as valid, and does not recognize a de facto marriage. This paragraph recognizes only that relationships do exist that provide economic support equivalent to a marriage and that alimony terminable on remarriage may be reduced or terminated upon the establishment of equivalent equitable circumstances as described in this paragraph.
§ 61.14(l)(b)3., Fla. Stat. (2005). The standard of review in determining what constitutes a “supportive relationship” as contemplated by section 61.14 is de novo since it requires the court to interpret the applicable law. See Chrestensen v. Eurogest, Inc., 906 So.2d 343, 344 (Fla. 4th DCA 2005); Buxton v. Buxton, 963 So.2d 950, 953 (Fla. 2d DCA 2007). We review the trial court’s factual findings to determine whether they are supported by competent, substantial evidence. Buxton, 963 So.2d at 953.
In Buxton, the Second District Court of Appeal discussed the new provision of section 61.14(l)(b) and determined that financial support is but one factor to be considered in concluding whether a “supportive relationship” exists. While consideration of financial support is an important part of that analysis (determining which relationships are equitably analogous to marriage) that factor alone does not define whether a “supportive relationship” exists. Id. at 955.
The former wife in Buxton lived with her paramour for ten years in a house owned by the former wife. 963 So.2d at 955. The paramour paid her rent of $575 per month which was not listed as “rent” on the former wife’s tax returns. Id. at 952. The couple slept in the same bed and shared household chores, maintenance, and items. Id. at 955. The couple, however, did not have joint bank accounts. Id. The *307 appellate court concluded that the factors presented in Buxton established that the couple was in a long-term relationship that provided both economic and social support equivalent to that of a marriage. Id. The court therefore determined that a “supportive relationship” as contemplated by section 61.14(l)(b) existed. Id. In reaching its decision, the court relied in part on legislative material that section 61.14(b) is meant to “provide an alternate method to a court to reduce or terminate alimony, without first having to find that there has been a change in financial circumstance, as is the case in current law.” Id. at 951 (citing Sen. Staff Analysis, C.B./S.B. 152 at 12 (February 25, 2005)).
Unlike the Second District Court of Appeal in Buxton which determined that the economic impact on the obligee was only part of the analysis in determining if there is a supportive relationship, the trial court in this matter concluded that section 61.14(l)(b) requires a relationship economically equivalent to a marriage. We adopt the reasoning of the trial court. The statute itself is clear in this regard.
As a matter of law, section 61.14(l)(b) requires the court to determine if an alimony obligee has entered into a relationship that provides the economic support equivalent to a marriage, and if so, the court may reduce or terminate alimony as the equities require. Section 61.14(l)(b) is actually a codification of prior case law which held that, in post dissolution matters, cohabitation can be a basis for reduction or termination of alimony awards. See Zeballos v. Zeballos, 951 So.2d 972 (Fla. 4th DCA 2007); Reno v. Reno, 884 So.2d 462 (Fla. 4th DCA 2004). In the cohabitation cases, courts were required to determine whether and how the new living situation impacted the alimony recipient’s financial condition and the continued need for alimony. Zeballos, 951 So.2d at 974; McBride v. McBride, 352 So.2d 1254 (Fla. 1st DCA 1977). Section 61.14(l)(b)2. now sets forth eleven nonexclusive statutory factors to guide the trial courts in determining when an economic supportive relationship exists between the parties. These factors include but are not limited to the length of cohabitation, and whether they have shown financial interdependence, agreed expressly or impliedly to support one another, actually supported one another, performed services for each other, bought property or assets together, or supported each other’s children. The court may rely on any factor listed, as well as others not listed, either alone or in combination, as the circumstances may suggest to find that their cohabitation is a supportive relationship. § 61.14(l)(b)2., Fla. Stat. (2007). The factors are therefore suggestions or guidelines to assist the court in determining whether the cohabitation is supportive in the same way that modern marriage is supportive.
In its Final Order, the trial court performed a detailed analysis of the eleven statutory factors and the facts of the case that applied to each factor. After weighing the factors in relation to the facts of the case, the trial court found that the former wife and Mr. Stewart were not in a supportive relationship as set forth in the statute. The trial court’s findings were supported by substantial competent evidence.
■ The evidence at trial was largely uncon-tradicted. The former wife and Mr. Stewart have resided together in his home for more than five years. They sleep in the same bedroom; they share cooking and household duties; and they host joint social events. Mr. Stewart pays the monthly mortgage on his home. The former wife’s name is not on the title of Mr. Stewart’s home or on the mortgage. The former wife and Mr. Stewart do not refer to each *308 other as husband and wife and they have not expressed any intent to marry. Each purchases groceries and household goods for the house which they freely share. They have never pooled their assets or income. The former wife has a savings account solely in her name. Her name is not on any of Mr. Stewart’s bank accounts and she has no access to such accounts. They do not have and never have had a bank account containing intermingled funds. They have not purchased any property together. They have not expressed any intention to merge their assets or otherwise share any of the property they currently own or possess. The former wife has no credit cards and is not an . authorized signer on Mr. Stewart’s cards. The former wife pays Mr. Stewart $1,000 a month as a contribution toward monthly rent and utilities. She uses a nine-year-old automobile purchased and insured by Mr. Stewart’s limousine business, and she also uses Mr. Stewart’s membership privileges in a nearby country club. Mr. Stewart pays none of the former wife’s monthly bills. He lent the former wife $5,000 several years ago and she still owes him $4,000. The former wife has not provided Mr. Stewart any financial support. Each has adult children from prior marriages, and each has an estate plan that leaves their assets to their respective adult children as beneficiaries. Neither has expressed an intention to change his or her estate plan to name the other as a beneficiary. There is no evidence that the for^ mer wife or Mr. Stewart has supported each other’s children.
It was within the trial court’s discretion to weigh these factors and reach an ultimate conclusion. This is clearly an evidence-based determination, specifically reserved to the trial court as the trier of fact. So long as the trial court acted within the broad confines of the reasonable person standard (i.e., that a reasonable person could have reached the same conclusion), the affirmance of that fact-based conclusion is required. The record does not show that the trial court abused its discretion in finding that there was no supportive relationship in this case that warranted a termination or reduction in the former wife’s alimony. From the facts outlined above, a reasonable person could conclude that this was not a supportive relationship. We should thus defer to the trial court and affirm for that reason. See Zeballos, 951 So.2d at 974 (applying abuse of discretion standard of review to trial court’s decision to reduce alimony under section 61.14); see also generally Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (explaining standard for appellate review when a judge exercises his discretionary power in determining alimony).
Furthermore, even if we ruled that a supportive relationship existed in this case, it would still be within the trial court’s discretion to refuse termination of alimony. Section 61.14(l)(b) provides that a court “may reduce or terminate an award of alimony upon specific written findings by the court that since the granting of the divorce and the award of alimony a supportive relationship has existed between the obligee and a person with whom the obligee resides.” (Emphasis supplied). The statute clearly makes termination or reduction of alimony permissive rather than mandatory, thus allowing the trial court to exercise sound discretion in light of the unique circumstances of each case.
The trial court further granted the former wife’s petition to increase her alimony. Permanent periodic alimony was designed to provide the necessities of life to the former spouse as they were established by the marriage of the parties. Woolf v. Woolf, 901 So.2d 905, 911 (Fla. 4th DCA 2005). If there is a change of cir- *309 cumstanees either party may apply for an increase or decrease in alimony. § 61.14(l)(a), Fla. Stat. (2007).
The trial court found that the former husband had experienced a dramatic increase in his income and assets since 2003 when the parties agreed to a downward modification of alimony. At trial, the former husband testified that at the time of the modification in 2003 he possessed about $36,000. He has since inherited approximately $350,000 from his late mother’s estate and receives approximately $68,000 per year from the estate of his late grandfather. This amount will continue until November 2025, at which time his 1/29 share of the corpus of the estate will be distributed and the former husband will receive his full share of the principal of the corpus. According to his financial affidavit, the former husband has a net monthly income of $10,000. He lives in a four bedroom, three bath waterfront home with a swimming pool in a golf course community. The former husband’s home is valued at approximately $500,000. He owns a large brokerage account with Ameritrade and a retirement account valued at $126,000.
The former husband lost over $500,000 in the stock market in the last two years. However, the former wife should not be penalized because of his day-trading decisions. Linn v. Linn, 523 So.2d 642, 643 (Fla. 4th DCA 1988) (“[P]oor management of one’s income is not the equivalent of a substantial change in circumstances sufficient to warrant a downward modification of an alimony award.”) Although the former husband has made poor investment decisions, he nevertheless clearly had an ability to pay alimony sufficient to meet the former wife’s current needs.
The former wife is a self-employed psychotherapist with a net monthly income of $1,598.04. Since the modification in 2003, the former wife’s net worth has only slightly increased as a result of an inheritance of $90,000 from her late mother’s estate, of which there remains approximately $45,000 after having dissipated same for deficit spending for her monthly living expenses and attorneys’ fees and accountant fees. She is now sixty-three years old, having entered into her field of psychotherapy in her early fifties after a twenty-seven year marriage. The trial court found that the former wife has been living at subsistence level, doing without many of the things that she enjoyed during her marriage and which the former husband still enjoys.
The standard of review for modification of alimony is abuse of discretion. Woolf, 901 So.2d at 911. The trial court did not abuse its discretion in increasing the former wife’s alimony. There is substantial competent evidence that supports an increase in alimony since the modification in 2003.
The trial court also awarded the former wife temporary appellate attorney’s fees and costs in connection with the former husband’s appeal of the lower court’s final judgment. The trial court ordered the former husband to reimburse the former wife $20,000 for her temporary appellate attorney’s fees and costs. The former wife had already paid her attorney $16,000 from her own funds. The former husband appealed this award. There is a significant disparity in the parties’ finances as to create a substantial financial imbalance. The former husband has the ability to pay the temporary appellate fees and costs awarded to the former wife. A reasonable award should not be disturbed on appeal. Costa v. Costa, 951 So.2d 924, 925 (Fla. 4th DCA 2007) (citing Nichols v. Nichols, 907 So.2d 620, 622 (Fla. 4th DCA 2005), and Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980)). Given the unrefuted dis *310 parity in the parties’ incomes and assets, the former wife should not be required to place herself in a position where she would, in effect, substantially deplete all or a significant portion of her assets to pay her appellate attorney’s fees and costs.
For the reasons stated above, we affirm the final judgment denying the former husband’s petition to terminate alimony and granting the former wife’s counter-petition for an upward modification in alimony. The award of temporary appellate attorney’s fees and costs is also affirmed.

Affirmed.

TAYLOR, J., concurs.
FARMER, J., dissents with opinion.