On Motion for Rehearing

ROTHENBERG, J.
We grant the appellee’s motion for rehearing, withdraw our former opinion dated October 3, 2012, and substitute the following opinion in its stead.
Nancy Murphy (“former wife”) appeals the trial court’s order granting her former spouse Dennis Murphy’s (“former husband”) petition for a downward modification of alimony and' denying her request for attorney’s fees. After conducting an extensive evidentiary hearing and conscientiously weighing the evidence, the trial court concluded that the former wife and Mark Llerena (“Llerena”) were involved in a “supportive relationship” within the meaning of section 61.14(l)(b), Florida Statutes (2011), and that a reduction in the former wife’s alimony was warranted. Accordingly, the trial court reduced the former husband’s alimony payment of $4,200 per month, which is currently of his *20 net salary,[1] to $3,500 per month, a $700 per month reduction. Because the trial court correctly- interpreted the law, the record evidence supports the trial court’s findings, and the $700 per month reduction is wholly reasonable, we affirm the trial court’s order granting the former husband’s motion for a reduction in his alimony obligation.
THE EVIDENCE
On September 14, 2005, the former husband and the former -wife entered into a marital settlement agreement, and their marriage was dissolved on November 9, 2005. Pursuant to the marital settlement agreement, the former husband was required to pay the former wife $8,200 in alimony and $1,000 in child support every month until August 1, 2006. ' Thereafter, the former husband’s child support obligation would terminate, and the former husband’s alimony obligation would increase to $4,200 per month. The agreement provided that alimony would terminate upon the former wife’s marriage or death, or upon the former husband’s retirement or his reaching the age of sixty-five, whichever occurred later. At the time of the dissolution, the former wife’s adult son and the parties’ seventeen-year-old daughter were living with the former wife.
In distributing the assets, the parties agreed to an uneven distribution, with the former wife receiving the marital ■ residence, which was valued at $450,000, but encumbered by a small $15,000 mortgage at the time of the modification hearing, an IRA at Smith • Barney, a fixed annuity, a cash value life insurance policy, and an automobile^ The former husband received a separate IRA at Smith Barney; his 401(k); a separate cash value life insurance policy; his State of Florida retirement account; and an automobile.
It is undisputed that the former husband made all payments timely and has complied with the terms of the final judgment of dissolution, despite the reduction of his salary and various increases in his expenses, which at the time of the eviden-tiary hearing included several substantial expenditures. The former husband has remarried, and his wife was living in her home in Broward County, which she could not sell because it was “upside down.” However, because the former husband is a Miami-Dade circuit court judge and must reside in Miami-Dade County, he maintained a separate residence in Miami. The former husband was also financially assisting the former wife’s adult son and supporting the parties’ adult daughter and her child (the parties’ grandchild), who were both living with the former husband’s wife in her Broward County home at the time of the evidentiary hearing. Based on the former husband’s salary reduction, he was paying the former wife 46% of his net income, compared to the 42% he was paying the former wife when the parties divorced in 2005, despite her decreased expenses and his increased expenses. The record also reflects that at the time of the evidentiary hearing the former husband was driving a 2004 GMC Envoy that had at least 118,000 miles because he could not afford to replace it.
In contrast, the former wife, who was fifty-eight years old at the time of the evidentiary hearing, no longer worked and was living with her boyfriend, Llerena, in the $450,000 former marital home. The *21 monthly mortgage payment on the remaining $15,000 debt was only $400.
The relationship between the former wife and Llerena began in 2008. Thereafter, they established a monogamous, romantic relationship. In March 2009, Llerena began living with the former wife in the former marital home. Although Llerena had full-time employment, he contended he contributed nothing towards the household expenses. He did not pay rent to the former wife and he did not contribute any money towards the utilities or the maintenance of the home. Although he periodically purchased some of the groceries, the former wife primarily paid for the food they consumed and the other products used within the household. According to Llerena, although he lived full-time with the former wife, he only contributed approximately $150 a month towards the relationship, which was spent on food and meals consumed outside of the home. Further, the former wife “loaned” Llerena $1,200 to enable him to purchase an automobile, but at the time of the hearing, the “debt” remained unpaid.
Besides providing Llerena with a home with various amenities—including a pool, and all of the comforts of a home—for the three years preceding the hearing, the former wife converted her son’s bedroom into a room for Llerena’s two minor children to facilitate Llerena’s overnight visitation with his minor children. The former wife purchased the beds and paid for the changes she made for the benefit of Llere-na’s minor children,' and she apparently also paid for the expenses incurred during their stays since there is no evidence that Llerena paid for anything other than $150 per month for food and meals consumed outside of the home.
THE TRIAL COURT’S ORDER
The trial court found that the former wife and Llerena were involved in a “supportive relationship” within the meaning of section 61.14(1)(b), and that based on this finding, section 61.14(1)(b)3. provided the court with authority to reduce or terminate the former husband’s alimony obligation to the former wife. Then the trial court considered the factors listed in section 61.08(2) in determining whether a reduction or termination of alimony was appropriate, as is required under that subsection. After considering all the relevant factors and balancing the equities, the trial court concluded that a $700 per month reduction in the former husband’s alimony obligation was warranted. Accordingly, the trial court reduced the former-husband’s’monthly alimony obligation from $4,200 per month to $3,500 per month, awarded him a credit of $2,100 for the overpayment of $700 per month for the three months preceding the issuance of the trial court’s order, and ordered that each party bear their own attorney’s fees and costs.
The former wife contends that the trial court’s order reducing the former husband’s alimony obligation must be reversed. We disagree. As the trial court’s order is supported by substantial competent evidence and comports with applicable Florida law, the order is affirmed.
LEGAL ANALYSIS
A. Standard of Review
Although the parties disagree as to this Court’s standard of review, we agree with the appellant and the Second District Court of Appeal that a review of a trial court’s decision under section 61.14(1)(b) is a mixed question of law and fact that requires a mixed standard of review. See Buxton v. Buxton, 963 So.2d 950, 953 (Fla. 2d DCA 2007). The trial court must first make factual findings *22 based on the evidence presented and then determine whether the facts establish the existence of a “supportive relationship,” which requires an interpretation of the statute and an application of the law to the facts. If the trial court concludes that a “supportive relationship” exists, it has the discretion to reduce or terminate the alimony obligation. Id. Thus, we review the trial court’s factual findings to determine whether they are supported by competent substantial evidence; the trial court’s interpretation and application of the law should be reviewed de novo; - and the exercise of the trial court’s discretion should be reviewed for- an abuse of discretion. See King v. King, 82 So.3d 1124, 1129 (Fla. 2d DCA 2012); Buxton, 963 So.2d at 953.
B. Modiñcation of Alimony
Section 61.14(l)(a) authorizes a modification of alimony when “the circumstances or the financial ability of either party changes ....”§ 61.14(l)(a); see also King, 82 So.3d at 1131. To obtain a modification under section 61.14(l)(a), the trial court must make a determination that: (1) there was a substantial change in circumstances; (2) the change was not contemplated at the time of the final judgment of dissolution; and (3) the change is sufficient, material, involuntary, and permanent in nature. Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992). Thus, prior to the enactment of subsection (b) of section 61.14(1) in 2005, to obtain a reduction or the termination of alimony based on unmarried cohabitation, the obligor was required to show a substantial change in circumstances, and unmarried cohabitation created a presumption of changed circumstances. Bridges v. Bridges, 842 Sq.2d 983, 984 (Fla. 1st DCA 2003).
. To find a sufficient change in circumstances to warrant a reduction or the termination of alimony based on cohabitation, a trial court is required to consider whether either of the following two factors is present: “[1] whether the cohabitant provides support to the recipient spouse, or [2] whether the recipient spouse contributes to the support of the cohabitant.” Bridges, 842 So,2d at 984 (citing Maclaren v. Maclaren, 616 So.2d 104, 106 (Fla. 1st DCA 1993)) (emphasis added).
For example, in Stuart v. Stuart, 385 So.2d 134, 135 (Fla. 4th DCA 1980), the Fourth District recognized that cohabitation relationships necessarily will result in either financial or in kind contributions flowing from the former spouse to the new partner or vice-versa, explaining:
Obviously, if a spouse receiving alimony enters into an arrangement which involves living with á member of the opposite sex, that is rather clear evidence of a substantial change of circumstances. There will either be financial or in kind contributions of the new partner to be taken into account, or, if the contributions go from the spouse to the new partner, the fact that the spouse is providing board and room to the new partner is evidence that the fair market value of those and any other contributions is some measure of the extent to which periodic alimony is excessive.
(emphasis added).
In Schneider v. Schneider, 467 So.2d 465, 466 (Fla. 5th DCA 1985), the Fifth District noted that, for three years, the former wife had been cohabitating with a man, -Rex Springer, in the former marital residence, and although Springer contributed little or nothing to the household expenses, the former wife was, to some extent, contributing to Springer’s support. Thus, the Fifth District reversed the trial court’s order denying modification of the former husband’s alimony based on the trial court’s finding that there *23 had not been a substantial change in the economic circumstances of the parties. Id. at 467-68.
In 2006, the Florida Legislature enacted subsection (b) of section 61.14(1), which codifies the law regarding reduction or termination of alimony on the basis of cohabitation. King, 82 So.3d at 1131. Section 61.14(l)(a) authorizes a modification of alimony when “the circumstances or the financial ability of either party changes,” whereas section 61.14(l)(b) authorizes modification based on the existence of a “supportive relationship” between the obligee and another person. § 61.14(l)(b); King, 82 So.3d at 1130. Section 61.14(l)(b) provides, in relevant part, as follows:
1. The court may reduce or terminate an award of alimony upon specific written findings by the court that since the granting of a divorce and the award of alimony a supportive relationship has existed between the obligee and a person with whom the obligee resides. On the issue of whether alimony should be reduced or terminated under this paragraph, the burden is on the obligor to prove by a preponderance of the evidence that a supportive relationship exists.
2. In determining whether an existing award of alimony should be reduced or terminated because of an alleged supportive relationship between an obligee and a person who is not related by consanguinity or affinity and with whom the obligee resides, the court shall elicit the nature and extent of the relationship in question. The court shall give consideration, without limitation, to circumstances, including, but not limited to, the following, in determining the relationship of an obligee to another person:
•.a. The extent to which the obligee and the other person have held themselves out as a married couple by engaging in conduct such as using the same last name, using a common mailing address, referring to each other in terms such as “my husband” or “my wife,” or otherwise conducting themselves in a manner that evidences a permanent supportive relationship,
b. The period of time that the obli-gee has resided with the other person in a permanent place of abode.
c. The extent to which the obligee and the other person have pooled their assets or income or otherwise exhibited financial interdependence.
d. The extent to which the obligee or the other person has supported the other, in whole or in part.
e. The extent to which the obligee or the other person has performed valuable services for the other..
f. The extent to which the obligee or the other- person has performed valuable services for the other’s company or employer.
g. Whether the obligee and the other person have worked together to create or enhance anything of value.
h. Whether the obligee and the other person have jointly contributed to the purchase of any real or personal property.
i. Evidence in support of a claim that the obligee and the other person have an express agreement regarding property sharing or support.
j. Evidence in support of a claim that the obligee and the other person have an implied agreement regarding property sharing or support.
k. Whether the obligee and the other person have provided support to *24 the children of one another, regardless of any legal duty to do so.
(emphasis added).
Section 61.14(l)(b) specifically provides that the court shall consider the economic support and other benefits the obligee has conferred upon the third party cohabitant. Section 61.14(l)(b)2.c. requires the court to consider “[t]he extent to which the obligee and the other person have pooled their assets or income or otherwise exhibited financial interdependence.” Section 61.14(l)(b)2.d. requires the court to consider “[t]he extent to which the obligee or the other person has supported the other, in whole or in part.” (emphasis added). Section 61.14(l)(b)2.e. requires the court to consider “[t]he extent to which the obligee or the other person has performed valuable services for the other.” (emphasis added). Section 61.14(l)(b)2.k. additionally requires the court to consider “[w]hether the obligee and the other person have provided support to the children of one another, regardless of any legal duty to do so.” There was clear and unre-futed evidence in the record as to each of these and other relevant factors.
The unrefuted evidence considered by the trial court was that the former wife had been living with Llerena in a monogamous, romantic relationship since 2008 in the former wife’s home, which she was awarded in the dissolution of her marriage. The former wife provided support to Llerena by providing him with a home, which includes a pool; paying all of the utilities, taxes, and insurances relating to the home; providing him with a location where he could exercise his visitation rights with his two minor children; providing a separate bedroom for Llerena’s children to sleep in and beds she purchased for that purpose; loaning him money to purchase a vehicle (a debt which remained unpaid at the time of the hearing); paying for all the maintenance and upkeep of the home; paying for all household supplies; and paying for most of the food expenses, as he only contributes approximately $150 per month towards his and his children’s food bill. Because the former wife, who was able-bodied and only fifty-eight years old at the time of the hearing, was not working, the former-husband was providing the means whereby his former wife could offer these substantial benefits to Llerena, who worked full-time but did not contribute towards his and his children’s room and board. Although the former wife and Llerena did not pool their assets or share a bank account, it is clear that Llerena was substantially dependent on the former wife. It is also undisputed that, although Llerena either lacked the financial ability or the inclination to provide financial assistance to the former wife, he did perform valuable services for the former wife. He cleaned the pool, cut the grass, periodically washed the former wife’s car, and helped with some of the chores. The relationship is not dissimilar to many marriages where one spouse financially supports the other, while the other spouse contributes by performing valuable services that reduce the couple’s overall expenses.
The cases relied on by the former wife do not support a conclusion that a supportive relationship cannot be found absent some form of direct economic support by the third party cohabitant to the recipient spouse. In Overton v. Overton, 34 So.3d 759 (Fla. 1st DCA 2010) (“Overton I”), Lynn Overton, the former wife, appealed the trial court’s order reducing her alimony award on the ground she was in a supportive relationship. The First Distinct reversed based on its findings that: (1) the trial court did not make any findings regarding the factors outlined in section 61;14(l)(b); and (2) the relationship *25 had not yet reached the point contemplated by the statute. Id. at 762. Although the former wife’s boyfriend lived with her when her children were not visiting her, and the former wife and her boyfriend drove to work together, there was no other indicia of a “supportive relationship.” Id. They did not pool their assets, did not hold themselves out as married, and unlike the facts in the instant appeal, had separate residences, and there was no evidence that either was supporting the other, providing valuable services to the other, or providing support to the children of the other. Id.
Subsequently, in Overton v. Overton, 92 So.3d 253 (Fla. 1st DCA 2012) (“Overton II ”), the First District addressed whether the trial court may exercise its discretion as to whether to reduce or terminate alimony upon finding that the former spouse was in a supportive relationship. In reaching its determination that the statute contemplates an exercise of discretion, the First District rejected Edward Overton’s reliance on language from Overton I, which is the very same passage relied on by the majority in the instant appeal. This passage quotes, in part, to French v. French, 4 So.3d 5 (Fla. 4th DCA 2009).[2] Overton II, 92 So.3d at 254-55. The Over-ton II court explained that this reference in Overton I was “obiter dicta,” id. at 254, and ultimately certified conflict with this reference in French. Id. at 255.
In King, another case relied on by the former wife, the Second District noted that “section 61.14(l)(a) authorizes a modification of alimony when ‘the circumstances or the financial ability of either party changes,’ ” King, 82 So.3d at 1131 (emphasis added), and that subsection (l)(b) must be read in pari materia with subsection (l)(a). King, 82 So.3d at 1131. In determining whether a reduction in alimony is appropriate under subsection (l)(b), the Second District noted that the trial court must consider the nature and extent of the relationship in question and the non-exclusive factors identified in subsection (l)(b)2. Id. at 1131. The Second District concluded that the analysis involved a four step process: (1) considering and making findings concerning the factors listed in section 61.14(l)(b)2. and any other pertinent circumstances; (2) determining whether, based on these findings, a supportive relationship exists; (3) considering the relevant economic factors for determining an award of alimony under section 61.08(2); and (4) determining whether alimony should be reduced or terminated and, if so, by how much. Id. at 1129. Although the trial court found that a supportive relationship existed, the appellate court concluded that because the supportive relationship, and thus the change in circumstances, predated the divorce and the award of alimony, the circuit court was not authorized to reduce or terminate the alimony payments under section 61.14(l)(b). Id. at 1132. The King court did not state that the determination of whether a supportive relationship exists requires a finding that the third party cohabitant is providing economic support to .the recipient spouse, nor could it under the statutory scheme. The statute specifically provides that a supportive relationship may exist if, in whole or in part, either the obligee or the other person is supporting the other, is provid *26 ing valuable services for the other, or providing support to the other’s children. See §. 61.14(l)(b)2.d., e.,.k. The impact that-a third party cohabitant’s contributions, financial or otherwise, may have on the former spouse’s need is merely a relevant consideration as to whether to reduce or terminate alimony after a determination is made that a supportive relationship exists. King, 82 So.3d at 1129.
CONCLUSION -
Contrary to the former wife’s argument that section 61.14(l)(b) requires at least some form óf economic support being provided to the- recipient spouse by a third party cohabitant, the statute provides that a supportive relationship may be established through the economic support provided by the recipient spouse to the third party cohabitant, and other valuable non-economic services provided by either to the other is a relevant consideration in determining whether a supportive relationship exists.
Based on the undisputed evidence that the relationship between the former wife and Llerena, which began in 2008 after the divorce, was a monogamous, romantic relationship; Llerena had been living with the former wife in the former marital home since March of 2009, and he had no other residence; Llerena did not contribute any money towards his share of the utilities or the maintenance of the home; the former wife primarily paid for the food they consumed; the former wife provided room and board and a venue to facilitate visitation for Llerena with his minor children at the former wife’s home; and Llerena provided certain valuable services, including maintenance of the pool and yard, and washing the former wife’s- car, the trial court’s finding that the former wife and Llerena were involved in a “supportive relationship” is supported by competent substantial evidence. Because the trial court considered and weighed the former wife’s need and the former husband’s decreased. ability to pay, the trial court’s order finding that a reduction- in the former wife’s alimony award was warranted is also supported by the evidence.
Lastly, the $700 per month reduction to the former husband’s $4,200 monthly alimony obligation was entirely reasonable. Thus, the trial court’s order reducing the former 'husband’s" monthly alimony obligation by $700 (from $4,200 to $3,500) is affirmed, and the former husband’s future alimony payments should be adjusted for payments he may have made to the former wife in excess of $700 from the time the trial court’s order granting the modification was entered.
Affirmed.

. When the parties entered into the settlement agreement, the monthly payments of $4,200 equaled 42% of the former husband’s net monthly income; however, after his salary was reduced following the dissolution, the $4,200 monthly payments equaled 46% of his net monthly salary.

. The passage relied on by the majority in the instant appeal and rejected by the First District in Overton II provides:
A supportive relationship is a relationship that “takes the financial place of a marriage and necessarily decreases the need of the obligee.” French, 4 So.3d at 6. Section 61.14(l)(b) recognizes the economic support that occurs when independent individuals cho[o]se to live together. Such support is equivalent to a marriage and requires a reduction in alimony. See id. at 8.
(alteration in original).