# Third District Court of Appeal

## State of Florida

Opinion filed October 11, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1400
Lower Tribunal No. 13-6518
_____

**Dena Spector**,
Appellant,

vs.

**Seth Spector**,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, David Young, Judge.

Wasson & Associates, Chartered, and Roy D. Wasson, for appellant.

Buckner, Shifrin, Etter, Dugan & Bradfute, P.A., and Emily M. Bradfute, for appellee.

Before SCALES, HENDON, and MILLER, JJ.

HENDON, J.

The former wife, Dena Spector ("Former Wife"), appeals from the trial

court's Amended Final Judgment Granting Former Husband's Verified Supplemental Petition for Termination of Alimony or, in the Alternative, Downward Modification of Alimony and Other Relief. In this order, the trial court terminated Seth Spector's ("Former Husband") obligation to pay the Former Wife monthly durational alimony pursuant to their Mediated Settlement Agreement ("MSA"). For the reasons that follow, we affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.

## I.    Facts

The parties married in 1995. In May 2013, the parties entered into a Mediated Settlement Agreement ("MSA"), which was incorporated into their final judgment of dissolution of marriage. Pursuant to the MSA, the Former Husband was required to pay the Former Wife specified amounts of durational alimony until June 1, 2023. Paragraph 12(d) of the MSA provides that the Former Husband's alimony obligation to the Former Wife may be modified or terminated if the Former Wife is in a "supportive relationship" as defined by Florida Statutes, or cohabitates.[1]

---

[1] We have considered the Former Wife's argument relating to the trial court's interpretation of paragraph 12(d) of the MSA. Based on our de novo review, we find no error. Helinski v. Helinski, 305 So. 3d 703, 706 (Fla. 3d DCA 2020) (holding appellate court reviews de novo trial court's interpretation of a settlement agreement).

In April 2021, the Former Husband filed a "Verified Supplemental Petition for Termination of Alimony or, in the Alternative, Downward Modification of Alimony and for Other Relief" ("Supplemental Petition"), relying on paragraph 12(d) of the MSA. The Former Husband asserted the Former Wife was (1) in a supportive relationship with Seth Selesnow ("Mr. Selesnow"), citing to section 61.14, Florida Statutes, which provides for the termination or reduction of alimony when the obligee enters into a supportive relationship subsequent to the granting of the divorce, and (2) cohabitating with Mr. Selesnow, either of which would warrant a termination or modification of alimony pursuant to paragraph 12(d) of the MSA.

The trial court conducted an evidentiary hearing on the Supplemental Petition, during which Mr. Selesnow, the Former Wife, and the Former Husband testified. The trial court entered an amended order granting the Former Husband's Supplemental Petition. In doing so, the trial court addressed the "circumstances" that the trial court "shall" consider "in determining the relationship of an obligee to another person," set forth in section 61.14(1)(b)(2)(a)-(k). Thereafter, the trial court ordered and adjudged as follows:

> 2. Former Wife cohabitated with Mr. Selesnow and alimony shall be terminated, retroactive to the date of the Supplemental Petition;

3. Former Wife was in a supportive relationship with Mr. Selesnow and alimony shall be terminated, retroactive to the date of the Supplemental Petition[.]

Moreover, the trial court ordered the Former Wife to repay all alimony paid to her as of the date the Former Husband filed the Supplemental Petition. The Former Wife did not file a motion for rehearing. This appeal follows.

## II. Standards of Review

The trial court's interpretation of the MSA is reviewed de novo. Helinski v. Helinski, 305 So. 3d 703, 706 (Fla. 3d DCA 2020). Further,

a review of a trial court's decision under section 61.14(1)(b) is a mixed question of law and fact that requires a mixed standard of review. The trial court must first make factual findings based on the evidence presented and then determine whether the facts establish the existence of a "supportive relationship," which requires an interpretation of the statute and an application of the law to the facts. If the trial court concludes that a "supportive relationship" exists, it has the discretion to reduce or terminate the alimony obligation. Thus, we review the trial court's factual findings to determine whether they are supported by competent substantial evidence; the trial court's interpretation and application of the law should be reviewed de novo; and the exercise of the trial court's discretion should be reviewed for an abuse of discretion.

Murphy v. Murphy, 201 So. 3d 18, 21-22 (Fla. 3d DCA 2013) (internal citations omitted). See also Klokow v. Klokow, 323 So. 3d 817, 821 (Fla. 5th DCA 2021) (holding that factual findings are reviewed to determine if they are supported by competent, substantial evidence, and a trial court's legal conclusion that a supportive relationship exists is reviewed de novo). Finally,

4

if a trial court finds the existence of a "supportive relationship" under section 61.14(1)(b), a trial court's decision to reduce or terminate alimony is reviewed for an abuse of discretion. See Gregory v. Gregory, 128 So. 3d 926, 927 (Fla. 5th DCA 2013); Buxton v. Buxton, 963 So. 2d 950, 953 (Fla. 2d DCA 2007) ("If the trial court determines that a 'supportive relationship' exists, we review the trial court's decision to reduce or terminate alimony for abuse of discretion.").

## II.    Analysis

As explained by the Second District Court of Appeal in King v. King, 82 So. 3d 1124, 1129 (Fla. 2d DCA 2012), when a trial court addresses a petition to terminate or reduce alimony under section 61.14(1)(b), the trial court "must employ an analysis that may involve four steps."  The Second District describes the analysis as follows:

> First, the circuit court must "elicit the nature and extent of the relationship in question." § 61.14(1)(b)(2). To accomplish this task, the circuit court must consider and make findings concerning the factors listed in section 61.14(1)(b)(2) and any other pertinent circumstances. Buxton v. Buxton, 963 So. 2d 950, 951-53 (Fla. 2d DCA 2007).  In the second step, based on its findings, the circuit court must determine whether the facts establish a supportive relationship. Id.  If the circuit court concludes that a supportive relationship does exist, then it must decide whether to reduce or terminate the alimony obligation. Id. at 952-53. In the third step, the circuit court must consider the relevant economic factors for determining an award of separate maintenance or alimony outlined in section 61.08(2).  Buxton, 963 So. 2d at 955-56.  In the fourth step, having considered the

5

relevant economic factors, the circuit court must determine "whether to reduce or terminate the Former Wife's alimony and, if to reduce it, by how much." Id. at 956.

King, 82 So. 3d at 1129.

In the instant case, the trial court followed the first and second steps. First, the trial court addressed all of the factors listed in section 61.14(1)(b)(2)(a)-(k).  Based on a review of the trial transcript and evidence introduced at the hearing, the trial court's findings are supported by competent, substantial evidence.  Second, based on these findings, the trial court concluded that the Former Wife was in a supportive relationship. Based on our de novo review, we find no error in the trial court's conclusion that the Former Wife was in a supportive relationship with Mr. Selesnow.[2] See Murphy, 201 So. 3d at 24, 26 (affirming the determination that the former wife and her boyfriend were in a supportive relationship and the reduction of former wife's alimony from $4,200 to $3,500 per month where the evidence showed that the former wife and her boyfriend were in a monogamous, romantic relationship, and he was living in the former wife's house; the boyfriend contributed only $150 per month, which was primarily used for his and his children's food; the former wife continued to pay all utilities, taxes,

---

[2] The trial court's finding that the Former Wife was cohabitating with Mr. Selesnow is also supported by competent, substantial evidence.

6

and insurance related to the home; the boyfriend cut the grass, cleaned the pool, periodically cleaned the former wife's car, and helped with some chores; and the former wife provided a separate bedroom in her home for the boyfriend's children to use during visitations, purchasing beds for that room); Klokow, 323 So. 3d at 821-22 (holding trial court correctly determined the former wife and her live-in boyfriend, Mr. Gutauckis, were in a "supportive relationship" under section 61.14(1)(b) where Mr. Gutauckis moved into the former wife's home and made numerous improvements to her home, and they have worked together to improve the value of the home; Mr. Gutauckis contributes $900 of in-kind rent each month by paying certain expenses; and "[t]hey support each other emotionally and are clearly involved in a serious relationship"); Buxton, 963 So. 2d at 954 ("The facts presented at the hearing show that the [f]ormer [w]ife and [her live-in boyfriend] are in a long-term, committed relationship that provides both economic and social support equivalent to that of a marriage. Under these circumstances, the evidence established the existence of a 'supportive relationship' as contemplated by section 61.14(1)(b).").

Next, we address whether the trial court abused its discretion by terminating alimony rather than reducing it. As stated in King, if a trial court concludes an obligee is in a supportive relationship, steps three and four of

7

the analysis requires the trial court to consider the relevant economic factors for determining an award of separate maintenance or alimony outlined in section 61.08(2), and thereafter, determine whether, based on those factors, the obligee's alimony should be terminated or reduced. King, 82 So. 3d at 1129.

In the instant case, the trial court followed step four—terminated alimony—but prior to doing so, failed to comply with step three—consider the relevant economic factors outlined in section 61.08.[3]  As a result of the trial court's failure to address the relevant economic factors, we cannot determine if the trial court abused its discretion by terminating the Former Wife's alimony.[4]  Accordingly, we reverse the portion of the order on review

---

[3] A review of the hearing transcript reflects the trial court did not make any findings relating to the relevant economic factors, and the order on review did not address the relevant factors. In determining whether to terminate and modify alimony based on cohabitating with Mr. Selesnow, economic factors should also be considered.

[4] The Former Husband argues that, because the Former Wife failed to file a motion for rehearing bringing to the trial court's attention its failure to address the relevant economic factors, the Former Wife cannot raise this argument on appeal.  We disagree.  See Broadfoot v. Broadfoot, 791 So. 2d 584, 585 (Fla. 3d DCA 2001) ("We do, of course, reserve the right to reverse on account of an absence of findings [set forth in section 61.08, Florida Statutes] (whether the point was raised in the trial court or not) if the absence of statutory findings frustrates this court's appellate review."); see also Ortiz v. Ortiz, 306 So. 3d 1081, 1082 n.1 (Fla. 3d DCA 2020) ("The former wife argues that the former husband waived his opportunity for this Court to review the issue of the trial court's omission of the statutory factors [pursuant

terminating the Former Husband's obligation to pay alimony to the Former Wife, and remand with instructions for the trial court to make the requisite findings, and based on those findings, to reconsider whether alimony should be terminated or reduced, and if the trial court determines that alimony should be reduced, to determine the reduced amount.[5]

Any remaining arguments do not merit discussion.

Affirmed, in part; reversed, in part, and remanded for further proceedings.

---

to section 61.075, Florida Statutes] by failing to specifically raise it in his motion for rehearing below. This type of error, however, is fundamental and is reviewable where the error is apparent on the face of the final judgment.").

[5] We take no position as whether the Former Wife's alimony should be terminated or reduced.