305 So.2d 842 (1975)
W. Robert LITTLE et al., Appellants,
v.
CASWELL-DOYLE-JONES CORPORATION et al., Appellees.
CASWELL-DOYLE-JONES CORPORATION, a Florida Corporation, et al., Appellants,
v.
GAINESWOOD DEVELOPMENT CORPORATION et al., Appellees.
Nos. U-125, U-140.
District Court of Appeal of Florida, First District.
January 9, 1975.
Henry L. Gray, Jr., and John H. Haswell of Chandler, O'Neal, Avera, Gray, Land & Stripling, Gainesville, for appellants in No. U-125, and appellees in No. U-140.
Stephen B. Lewallen of Andrews & Lewallen, Gainesville, and Benjamin K. Phipps, Tallahassee, for appellants in No. U-140, and appellees in No. U-125.
RAWLS, Chief Judge.
These consolidated appeals arise out of a three-million dollar condominium construction project that collapsed after encountering *843 a 30 percent construction cost overrun. Each of the parties were involved in the project. After the dreams of substantial profits evaporated, leaving a residue of loss of capital, the instant suits materialized.
Caswell-Doyle-Jones, Levine, and Lidgerwood sought a judgment on certain promissory notes securing loans to Gaineswood Development; said notes being endorsed and guaranteed by Gaineswood's principal officers, Little and Goishen and their wives. The trial court by its final judgment held that the loans taken in parimateria with a stockholders agreement were usurious and a violation of Sections 687.04 and 687.071, Florida Statutes (1971); however, that pursuant to the doctrine Wilensky v. Fields, 267 So.2d 1 (Fla. 1972), the individual endorsers were liable for the face amount of the notes.
Little and Goishen and their wives contest the trial court's finding that they are personally liable for the principal of the subject notes. Caswell-Doyle-Jones, Levine and Lidgerwood contend the trial court erred in finding that the transaction with Gaineswood was usurious and its failure to require payment of interest from the date of the promissory notes.
Robert Little and Irwin Goishen were the principal stockholders and officers of Major Construction Company. According to Little, the project grew out of a proposed rental development "... in which we, the principals, were looking for investors for the purpose of constructing the rental project." Little visited with Mr. Levine in California and upon his recommendation, changed the project to a condominium development. After preparing several financial projections, a final financial prospectus was furnished to each proposed investor. Little "... in looking for various co-ventures" went to Miami and presented to a Mr. Pass, an associate of Mr. Turk, the financial prospectus which information was transmitted to Turk and Mr. Jones. Ultimately the "deal" was put together resulting in Gaineswood Corporation being formed with paid-in capital of $10,000.00 by its ten stockholders who were Florence Levine; L.B. Jones; Jack W. Turk; W. Robert Little; William Van V. Lidgerwood; Dr. Alfred A. Ring; Irwin Goishen; Mr. and Mrs. Nielsen; Mr. Gilman, and Robert Edmunds.
Loans in the aggregate principal sum of $210,000 from eight of the stockholders constituted the major source of equity financing for developing the Gaineswood condominium project. Involved in this litigation are loans by L.B. Jones, $12,500; Jack Turk, $12,500;[1] William Van V. Lidgerwood, $20,000, with each note providing payment of interest at six (6) percent per annum. Each note carried the recitation: "This note is one of a series of eight (8) notes which in the aggregate are in the amount of $210,000.00" and following the maker's (Gaineswood Development Corporation) execution by W. Robert Little, attested by Robert C. Edmunds, the following recitation: "For value received, I hereby guarantee payment of the above note" which was signed and sealed by W. Robert Little; Carol D. Little, his wife; Irwin Goishen; and Joyce K. Goishen, his wife. Clearly, the instruments upon their face are not usurious and the guarantors are individually liable for the payment of same, unless extrinsic evidence as to the overall transaction, when considered in pari materia, renders a different result.
What is such extrinsic evidence that led the trial court to its conclusion? Apparently, it is twofold, viz.: 1) a stockholders agreement that was an integral part of the transaction, and 2) the "thin" capitalization *844 of Gaineswood and requirements of Subchapter S of the Federal Internal Revenue Code.
The stockholders agreement is clear and concise. It provided, inter alia:
"After providing funds for completion and full payment of the estimated cost of construction plus $50,000 for contingencies ... the cash flow from the sale of the units shall be applied on a monthly basis to payment of the principle [sic] and interest on the shareholders' notes. After these notes are paid in full, then this cash flow will be paid proportionately to the stockholders in accordance with their ownership interest, except that the following stockholders, because of their special assistance, expertise and contribution to the success of the project, shall be entitled to receive proportionate advances against their proportionate shares in the profits from Phase I until each has received a total advance distribution as follows.... [The computation amounts to one half of each individual loan]" [E.S.]
The next distribution provided for payment of $84,000 to Major Construction Co. (Little and Goishen owned 80 of 90 outstanding shares); and the next distribution of $78,000 to Little; $52,000 to Goishen; $15,000 to Edmunds; and $50,000 to Ring (a noteholder who had loaned $100,000 and who was entitled to $50,000 in the first distribution). Any subsequent distributions were to be made in direct proportion to the stock ownership.
In considering a similar agreement, the Delaware Supreme Court in State v. Tobasso Homes, 3 Terry 110, 28 A.2d 248 (Del. 1942), stated:
"`If there is one thing more than another which public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting' and that this freedom of contract shall not be lightly interfered with."
As between these stockholders, with each agreeing, the undivided profits, or call it dividends, could be distributed in any manner unanimously agreed upon.
The trial court in holding that an agreement controlling the distribution to one group of stockholders was in actuality interest on their loans, and thus usurious, apparently overlooked the fact that no fixed duty was imposed upon the corporation or the guarantors to pay more than the principal sum loaned with interest at the rate of six (6) percent per annum. The agreement for preferential participation in profits was a voluntary agreement on the part of each stockholder. Had the shareholders agreed to give all profits to one shareholders such freedom of contract as between shareholders of competent understanding is not a contract to be rewritten by the courts.
Gaineswood, Little and Goishen submitted considerable testimony and their arguments were devoted to the "thin corporate financial structure" of Gaineswood in support of their theory that the transaction was infected with usury at the outset. One theory advanced was that these loans constituted capital contributions to Gaineswood, and the trial court in its findings of fact held:
"having elected to be treated as a Subchapter S corporation, the Defendant corporation was limited to the issuance of but one class of corporate stock, and the stockholders utilized the Stockholders' Agreement as a device to provide additional contributions to the capital of the corporation, with an inducement of preferential return exceeded the maximum interest rate allowed by law."
The law of this jurisdiction as to corporate structure is not amended or engrafted upon by the intricacies of tax advantages or disadvantages of the Federal Internal Revenue Code. The salient question posed is may stockholders of a corporation unanimously agree to preferential *845 distribution of corporate profits? The answer is a resounding, Yes! We pointedly do not consider or comment as to the propriety of those not bound by the agreement challenging the financial structure of such a "thin" corporation as is here reflected.
The judgment appealed is reversed with directions to enter judgments upon the promissory notes sued upon together with six (6) percent per annum interest against the maker, Gaineswood Development Corporation, and the individual guarantors, W. Robert Little; Carol D. Little, his wife; Irwin Goishen, and Joyce K. Goishen, his wife.
Reversed and remanded.
BOYER and McCORD, JJ., concur.
NOTES
[1] The Jones and Turk notes were immediately assigned to Caswell-Doyle-Jones Corporation which advanced the money loaned; however, these individuals (who are principals in Caswell-Doyle-Jones) accepted the notes in their individual capacity in order to afford the stockholders in Gaineswood the opportunity to seek Subchapter S treatment by the Federal Internal Revenue Service.