652 So.2d 1156 (1995)
Cynthia BEATY, f/k/a Cynthia Gribble, Appellant,
v.
J. Steven GRIBBLE, Appellee.
No. 93-03088.
District Court of Appeal of Florida, Second District.
February 10, 1995.
Rehearing Denied April 12, 1995.
*1157 William T. Haverfield, II, Pavese, Garner, Haverfield, Dalton, Harrison & Jensen, Robert L. Donald, Fort Myers, for appellant.
Stevan T. Northcutt, Levine, Hirsch, Segall & Northcutt, P.A., Tampa, for appellee.
PARKER, Judge.
Cynthia Beaty, formerly known as Cynthia Gribble (wife), appeals a final judgment dissolving her marriage with J. Steven Gribble (husband). We reverse because we conclude that the trial judge's findings regarding the valuation of certain assets and the designation of certain assets as either marital or nonmarital are not supported by substantial competent evidence in the record.
The parties were married in 1985 and separated in 1988. In 1991 the wife petitioned for dissolution, and the court entered the final judgment in 1993. The husband, age forty-eight at the time of the final hearing, is an attorney who also is a partner in a title insurance company. He is the owner or partial owner of numerous properties. He also was involved in an investment group which purchased and sold lots to a corporation that subsequently went bankrupt, resulting in criminal prosecutions of the corporate officers. The husband was not prosecuted but has been sued for fraud. The wife, age thirty-nine at the time of the final hearing, has a high school education and a real estate license. The parties have two minor children.
First, we conclude that the trial court did not err in establishing the husband's child support obligation and in making the husband and wife coprimary residential parents. We, therefore, affirm the judgment in that regard.
The parties' most substantial asset is a house in Boca Grande. The trial court's finding that the value of the Boca Grande house was $620,000 is supported by substantial competent evidence. Because mortgages totaling $266,247 encumbered the house, it had a net value of $353,753. The husband lives in this house with the parties' children. Instead of awarding the wife one-half interest in the Boca Grande house, the trial judge awarded her other assets to compensate her. The problem with the equitable distribution is that the court placed too high of a value on some of the assets which was not supported *1158 by the evidence and also designated some assets nonmarital assets of the husband, which the record shows were either marital assets or a nonmarital asset of the wife.
The wife challenges the court's valuation of four assets. The first asset is the Ocala office building which the court assigned a net value of $80,000. The husband, as the owner of the asset, testified that the building was worth $108,500. His financial affidavit, which was admitted into evidence at the final hearing, showed that the building had a mortgage of $80,454 which left an equity of $28,046. The wife's financial affidavit showed that the building was worth $80,000; however, she testified that she arrived at that figure because the husband had told her that the building was worth that amount when they were discussing the civil lawsuit against the husband. She offered into evidence an undated handwritten sheet of paper on which the husband wrote that the Ocala office building had a value of $160,000 and a mortgage of $80,000.
The husband's testimony at trial was competent evidence of the value of the building because he was the owner. See Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla. 2d DCA 1961). The wife's valuation on the financial affidavit was not competent evidence because she was not the owner of the building. The fact that she testified that she relied on the husband's prior valuation does not make the evidence competent. The handwritten sheet is not the same as when a court relies upon a spouse's valuation of his or her worth on an executed loan application because a person who makes misrepresentations on a signed loan application exposes himself or herself to civil or criminal liability. Thus, the only competent evidence in the record shows that the net value of the Ocala office building is $28,046.
The wife also challenges the values the court placed on two office condominiums. On the condominiums described as Units B-1 and C, the court valued the husband's share of their equity at $20,000 and $30,000 respectively. The husband, as partial owner of the condominiums, testified at trial that the condominium offices had no equity value because he and his coowners owed more on them than they were worth. The husband's financial affidavit is consistent with his testimony. The wife's financial affidavit, on the other hand, placed a value of $20,000 on Unit B-1 and $30,000 on Unit C. Again she testified that her values were based on what her husband previously told her. Based on these facts, the only competent evidence at trial was that the condominiums had no equity value.
The wife contests the trial court's finding that the Englewood house had a net value of $34,000. The husband's financial affidavit placed a fair market value of $94,000 on the house and showed a debt of $66,051 for an equity value of $27,949. The wife's affidavit showed $100,000 as the value. The wife testified that her figure was based on what her husband told her. The wife's counsel told her on direct examination that the husband submitted an appraisal that the Englewood house was worth "I think at 93,000." He then asked the wife her opinion as to the value, and she stated, "I would think that would probably be a fair  93 would be close." Thus, the only competent evidence at trial was that the equity in the house ranged from $26,949 to $27,949. There is no competent evidence in the record to support the court's equity value of $34,000.
Next the wife disputes the court's designation of eleven assets as nonmarital property of the husband. Nonmarital property includes assets acquired before the marriage, assets acquired during the marriage in exchange for assets acquired before the marriage, and all income derived from nonmarital property during the marriage. § 61.075(5)(b)1, 3, Fla. Stat. (1991).
Our review of the record reflects that there was support for the trial court to declare the following assets as nonmarital property because the husband either acquired them before the marriage or acquired them during the marriage through an exchange for nonmarital assets: Valerie Henry note; Ocala office building; part of the Okeechobee house note receivable; Hall mortgage receivable; Port Charlotte office; Ocala office; Northport office; Placida office; Palm Bay office; and the convenience store note receivable. *1159 Although the wife argues that she is entitled to one-half of $28,000 of marital funds used to stock the convenience store which the husband's father operated, the husband testified that the family took $300 to $350 in groceries and gasoline per month out of the store for eight to nine years, which the trial court could conclude was a return to the family of goods equal to the marital contribution into the business.
We conclude that the trial court erred in declaring part of one asset and a second asset as nonmarital properties of the husband. The husband acquired one-half of the Okeechobee house note receivable during the marriage. Thus, one-half of the note is part of the marital estate. The Tri-Ace Corporation, which the trial court also declared a nonmarital asset of the husband, was titled to the wife before the marriage. There is no record evidence to establish any subsequent assignment to the husband. This corporation, therefore, is the nonmarital property of the wife.
The wife contests the trial court's designation of the husband's appraisal fees and medical expenses incurred after the separation as marital liabilities. We conclude that the trial court erred and that these are liabilities of the husband alone. See § 61.075(6), Fla. Stat. (1991).
The wife challenges the court's equitable distribution plan wherein the court awarded the wife some of the husband's nonmarital assets and some marital assets which are intertwined with the husband's business interests in exchange for her interest in the Boca Grande house. We conclude that the trial court did not abuse its discretion in doing so. See Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985). The court, however, on remand must revise its equitable distribution plan because we have determined that the court erred in its valuation of certain assets and in its designation of some assets and liabilities as either marital or nonmarital properties. The court may find that it has no other viable option but to award the wife her one-half interest in the Boca Grande house. This court, therefore, reverses the Final Judgment of Dissolution of Marriage and remands for entry of a final judgment with a different equitable distribution of the property which is consistent with the conclusions reached in this opinion.[1]
Reversed and remanded.
CAMPBELL, Acting C.J, and FULMER, J., concur.
NOTES
[1] The wife raised numerous arguments in her appeal. Any argument which this court chose not to address specifically is deemed to be without merit.