RAMIREZ, C.J.
 

 Jose Valladares, the husband, appeals the trial court’s Final Judgment of Dissolution of Marriage and subsequent Amended Final Judgment of Dissolution of Marriage awarding his former wife an equitable distribution award, lump sum alimony, permanent periodic alimony, and child support. The husband also appeals the trial court’s Final Judgment granting attorney’s fees, costs and suit monies to the wife, Jacqueline Junco-Valladares. We affirm the dissolution of the parties’ marriage and the equitable distribution of
 
 *521
 
 the parties’ marital home but reverse and remand for further proceedings on the other issues of equitable distribution, alimony, and child support.
 

 I.
 
 Factual Background
 

 The parties, husband Jose Valladares and wife Jacqueline Junco-Valladares, were married on December 31, 1992 and separated in January of 2007. The petitioner filed a petition for dissolution of the marriage on March 6, 2007 and the case proceeded to trial on June 13, 2008. This fourteen-year marriage resulted in two minor-children. The children were nine and ten years old at the time of trial; the wife was forty two years old and the husband was seventy years old. The husband also has five adult children from two prior marriages but neither party has other minor children.
 

 The husband is a general surgeon in solo practice. The wife is also a doctor but has never had a license to practice medicine in the State of Florida or elsewhere. The trial court noted in the Amended Final Judgment of Dissolution of Marriage: “it is not reasonable to find that [the] Wife can earn the necessary licenses to practice medicine based on a medical degree earned twenty (20) years ago.” The wife did, however, obtain a master’s degree in public health and is employed full-time with the Veterans Administration Medical Center earning $47,000.00 annually as of 2007.
 

 The record regarding the husband’s income is less clear. At trial, Phillip Schec-ter, the joint financial expert, testified that the husband’s income in 2006 was $256,743, but that he was in arrears for his federal income taxes for both 2005 and 2006. Schecter further testified that the husband had not yet filed his 2007 income tax return. The husband disputed that his current income is as high as Schecter indicated. At trial he stated: “[a]t 70 years of age, I cannot continue to work the same way I was working before. I should have retired ...”
 

 The husband also testified that the net income he derived from his medical practice amounts to an annual salary of $74,000, and he provided a revised financial statement to that effect. In contention between his tabulation and the various tabulations provided by Schecter for the trial court’s perusal, were costs that the husband deducted from the gross receipts of his practice. This included costs he attributed to employee salaries and how rent indebtedness for his medical practice should be recognized.
 

 The husband claimed $36,000 as the rental cost incurred by his medical practice, a sum which Schecter agreed was a fair price. However, in 2007, the husband only paid $10,708 towards the $36,000 rent figure. The husband paid the rent to an entity in which he owned a twenty-five percent interest and the $10,708 sum paid represented only the annual real estate taxes for the property where his medical practice was located. The husband claimed that the unpaid $25,292 balance remaining was debt, “accrued rent not paid” and listed that amount as an expense in his revised financial affidavit. In contrast, Schecter viewed the unpaid amount as additional cash flow since he had in fact only paid out $10,708 for rent.
 

 Ultimately, the trial court determined that the husband’s gross annual income amounted to $179,757 and based its decisions on that sum. Included in the $179,757 figure are social security benefits that the husband received. The husband continued to work beyond the age of retirement, and in addition received a monthly social security benefit of $1,184. Further, because the husband was entitled to social security benefits, his minor children were provided with dependent benefits attributable to their father’s social se
 
 *522
 
 curity benefits. Each minor child received a monthly benefit of $715, payable until they turn eighteen. The trial court redirected the combined children’s $1,430 monthly benefit checks to the wife. Then, based on Schecter’s advice, the trial court imputed the $1,430 monthly social security benefit into the wife’s income. The trial court did not factor the children’s social security benefits into the husband’s income, and it did not offset the children’s social security benefit from the husband’s child support obligations.
 

 The main controversy regarding the division of marital assets involves the Coral Gables waterfront home, in which the couple resided during most of their marriage. This house was purchased by the husband and his first wife in 1978, fourteen-years prior to the marriage at issue, and was titled solely in the husband’s name during the marriage.
 
 [1]
 
 The home was flooded by Hurricane Andrew in August 1992. The parties were married in December 1992. The testimony was that both parties devoted personal time and attention to the rebuilding, which took four years, and marital funds were used to pay for the maintenance, upkeep and taxes on the property. By statute, a marital asset included “the enhancement in value and appreciation of non-marital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both.” § 61.075(5)(a)2, Fla. Stat. (2007).
 

 At trial, the husband testified that the value of the house was $1,921,000 based on the county’s tax assessment. In contrast, the wife testified that another house down the street had recently sold for $3.6 million and reasoned that the marital home was worth $4 million, since it was larger. She further testified that the fair market value of the residence was $1.5 million at the time they had married. The husband did not object to the wife’s valuations at trial. The trial court accepted the valuations proposed by the wife, determined that the present fair market value of the home was $4 million, and concluded that $2.5 million represented the appreciation of the marital residence during the marriage.
 

 Consequently, the trial court awarded the wife $1.25 million as lump sum alimony based on one-half of the value the marital home appreciated during the marriage. The court also awarded the wife an additional $173,469 equalization payment. This figure was tabulated from pay-downs made to mortgages on the marital home, made during the course of the marriage. The wife was also awarded permanent periodic alimony in the amount of $2,200 per month, child support in the amount of $1,729 per month, attorney’s fees of $65,307.50 and court costs of $1,984.15.
 

 II.
 
 Analysis
 

 The standard of review for divorce proceedings is abuse of discretion. “The findings and judgment of the trial court come to us clothed with a presumption of correctness and may not be disturbed upon appeal in the absence of a record demonstrating errors of law.”
 
 Merritt v. Williams,
 
 295 So.2d 310, 311 (Fla. 1st
 
 *523
 
 DCA 1974). Beyond this deferential standard of review, the husband in the instant action is disadvantaged because he represented himself pro se at trial and failed to preserve issues that he now appeals.
 
 Dade County School Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 644 (Fla.1999) (a claim not raised in the trial court will not be considered on appeal). This Court held in
 
 J.T.A. Factors, Inc. v. Philcon Sens., Inc.,
 
 820 So.2d 367, 370 (Fla. 3d DCA 2002), that “[a]s a general rule, it is not appropriate for a party to raise an issue for the first time on appeal.”
 

 However, a trial court’s legal conclusions, such as whether an asset constitutes a “marital asset,” are reviewed de novo for clear error.
 
 See Buxton v. Buxton,
 
 963 So.2d 950, 953 (Fla. 2d DCA 2007). A legal conclusion, “not supported by substantial competent evidence in the record” is fundamental error and should be reversed.
 
 Beaty v. Cribble,
 
 652 So.2d 1156, 1157 (Fla. 2d DCA 1995).
 
 See also Herrera v. Herrera,
 
 673 So.2d 143 (Fla. 5th DCA 1996). Furthermore, the First District Court of Appeal held that “[t]he equitable distribution statute contemplates that the trial court will make adequate findings of fact to explain and justify its rulings.”
 
 Smith v. Smith,
 
 971 So.2d 191, 194 (Fla. 1st DCA 2007).
 

 A. Equitable Distribution Award
 

 We turn now to the husband’s points on appeal. The issues are (1) whether the trial court abused its discretion in its distribution of assets and liabilities, (2) whether the trial court abused its discretion when it awarded the wife lump sum alimony and permanent periodic alimony, and (3) whether the trial court erred in its award of attorneys’ fees and costs. We conclude that the trial court abused its discretion regarding the first two issues.
 

 It is well established under Florida law, that “in distributing the marital assets and liabilities, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, ... including those factors set forth in section 61.075(l)(a) through (j), Florida Statutes (2001).”
 
 Christ v. Christ,
 
 854 So.2d 244, 247 (Fla. 1st DCA 2003);
 
 Parham v. Parham,
 
 968 So.2d 716, 717 (Fla. 2d DCA 2007).
 

 In awarding the wife permanent periodic alimony, we hold that the trial court erred because it failed to consider the wife’s finances in light of its concurrent award to her of $1.25 million as lump sum alimony. The trial court also erred in that it failed to provide a legally sufficient factual basis to support its determination that the husband’s income as a surgeon will continue to be commensurate with that of his prior earnings, now that he is over seventy years of age.
 

 The forensic accountant provided evidence at trial that several mortgages were paid off or reduced during the marriage using marital funds. The First District Court of Appeal has stated that “if the increased value [in an asset] was the result of either the work efforts of one or both spouses or the expenditure of marital funds or earnings of the parties” such a portion of the increase in value is a marital asset.
 
 Graff v. Graff,
 
 569 So.2d 811, 812 (Fla. 1st DCA 1990).
 
 See also Stevens v. Stevens,
 
 651 So.2d 1306, 1307 (Fla. 1st DCA 1995);
 
 Young v. Young,
 
 606 So.2d 1267, 1270 (Fla. 1st DCA 1992);
 
 Massis v. Massis,
 
 551 So.2d 587, 589 (Fla. 1st DCA 1989).
 

 The trial court considered the forensic accountant figures in calculating an equitable distribution award of $173,469 to the wife. However, the trial court also considered those same figures in its rationale to award the wife $1.25 million as a lump sum alimony award, based on the
 
 *524
 
 marital contributions she made to the non marital asset, as well as the appreciation of those contributions. At issue are the pay-downs on the three mortgages on the residence. Consequently, the equitable distribution award of $173,469 partially “allow[s] the wife to essentially double dip” from her contributions to this asset and is error.
 
 Sell v. Sell,
 
 928 So.2d 359, 360 (Fla. 3d DCA 2005). Therefore, the $173,469 equitable distribution award must be recalculated by eliminating the mortgage pay-downs from the calculation. We leave the temporary alimony award in place, pending the wife’s receipt of the $1,250,000 lump sum alimony award and the equitable distribution award. The temporary alimony award may be adjusted in amount or duration within the discretion of the trial court.
 

 As to the trial court’s award of attorney’s fees and costs to the wife, there was testimony that the husband owns substantial income-producing non marital assets. The statute addressing attorney’s fees, suit money, and costs contemplates the trial court’s consideration of “the financial resources of both parties,” including the parties’ relative financial need or ability to pay.
 
 See
 
 § 61.16(1), Fla. Stat. (2009);
 
 Rosen v. Rosen,
 
 696 So.2d 697, 700 (Fla. 1997). Therefore, we find no abuse of discretion in the trial court’s award of attorney’s fees, costs, and suit monies to the wife.
 

 Thus, we reverse the amended final judgment with respect to the issues previously discussed and remand for a redistribution of the marital assets and liabilities.
 

 B.
 
 Marital Home Valuation
 

 The trial court did not abuse its discretion in its decision to accept the wife’s testimony over than that of the husband’s in regards to the marital home’s value. Although the home was titled to the husband, the wife had lived at that home for most of the fourteen-year duration of the marriage, had made significant contributions to the property during the marriage and was consequently in a position to attest as to its value. Further, in regards to the home’s valuation, although the trial court did not exceed its discretion in its determination that the wife’s testimony was more credible, we observe that by failing to object
 
 to his
 
 wife’s valuations at trial, this issue has not been preserved for appeal.
 
 Castor v. State,
 
 365 So.2d 701, 703 (Fla.1978).
 

 C.
 
 Children’s Social Security Benefits
 

 Based on the testimony of the neutral forensic expert, the trial court incorrectly imputed the minor children’s Social Security benefits as income to the wife. The trial court’s determination to assign the children’s Social Security benefits directly to the wife is pragmatic, but it does not follow that the dependent benefits attributable to the husband’s Social Security benefits should then be imputed into the wife’s income. “[S]ection 61.30(ll)(b) refers specifically to a final adjustment in the child support award because of the income of the child. This statute plays no part in determining what income is attributable to the parent obligor in the calculation of the guideline amount.”
 
 Sealander v. Sealander,
 
 789 So.2d 401, 403 (Fla. 4th DCA 2001).
 

 Although payment of the children’s Social Security benefits was assigned to the wife, these benefits should have been calculated as part of the husband’s income for the determination of child support and further used to offset the husband’s child support obligation. “[Wjhen a parent is receiving social security ... and, as a result, his or her children receive dependent benefits, the total benefits received by or on behalf of that parent are attributed to the ... parent as income
 
 *525
 
 in the child support guideline calculation. The dependent benefits are then credited toward the ... parent’s obligation, that is, they are a payment of the obligation on behalf of the ... parent.”
 
 Id.
 
 Attributing these benefits as “income” to the custodial parent is only proper when the funds are provided to a child who is disabled and as such “may receive supplemental security income in his or her own right.”
 
 Id.
 

 In this case the husband receives social security retirement benefits. According to the amended final judgment, the social security administration pays a total of $1515 in dependent benefits for the two children.
 
 [2]
 
 Under
 
 Sealcmder,
 
 the $1515 dependent benefits should be included as part of the husband’s income for purposes of calculating the child support obligation.
 
 Id.
 
 at 403;
 
 see also Wallace v. Dept, of Revenue,
 
 774 So.2d 804, 808 (Fla. 2d DCA 2000);
 
 Williams v. Williams,
 
 560 So.2d 308, 310 (Fla. 1st DCA 1990); However, since the dependent benefits will be sent directly to the wife (as primary residential parent) for use on behalf of the children, the $1515 monthly dependent benefit is deemed to be paid on the husband’s behalf. The husband is then responsible for paying the remainder of the monthly support obligation.
 
 [3]
 

 On remand the child support obligation will need to be recalculated so as to include the monthly dependent benefit in the husband’s income and take into account our elimination of permanent alimony.
 

 III.
 
 Conclusion
 

 We hold that the trial court exceeded its discretion in its equitable distribution award. The trial court, however, did not abuse its discretion in accepting the wife’s testimony as to the marital home’s valuation.
 

 For the foregoing reasons, we reverse the equitable distribution award, including the award of permanent periodic alimony, and we reverse the child support award, and remand to the trial court for further proceedings consistent with this opinion with regard to these issues. We affirm the amended final judgment of dissolution of marriage in all other respects.
 

 Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . The home was flooded by Hurricane Andrew in August 1992. In December 1992, the parties were married. According to the testimony, the home was rebuilt using insurance proceeds and a $50,000 loan. The testimony was that both parties devoted personal time and attention to the rebuilding, which took four years, and marital funds were used to pay for the maintenance, upkeep, and taxes on the property. By statute, a marital asset includes "the enhancement in value and appreciation of non-marital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both.” § 6t.075(5)(a)2„ Fla. Stat. (2007).
 

 [2]
 

 . There is a discrepancy regarding this figure. The testimony was that each child received $715 per month, for the total of $1430. The accountant's calculation and the judgment, however, put the figure at $1515. The discrepancy should be resolved on remand.
 

 [3]
 

 . For example, if the husband’s monthly child support obligation were calculated at $1800 per month and the wife is receiving the dependent benefit of $1515 per month, it follows that the husband must make a child support payment to the wife of the shortage, namely, $285 per month.