COHEN, J.
Former Husband, Peter Eldridge, appeals a final order that granted, in part, Former Wife, Patricia Eldridge’s various post-judgment motions (“the 2012 Order”). In the 2012 Order, the trial court was required to interpret a previously entered final judgment that dissolved the parties’ marriage (“the Original Judgment”). We reverse, holding that the trial court erred in (1) reclassifying temporary alimony payments as corporate distributions; (2) awarding Former Wife one-half of the shareholder distributions from the marital business, Apex Pest Control, Inc. (“Apex”); *1050 and (3) awarding Former Wife attorney’s and expert witness fees.
The parties, who were married for twenty-five years, dissolved their marriage in 2006. During the marriage, they were equal shareholders in Apex, a closely-held subchapter S corporation. It appears that, immediately before trial on their dissolution of marriage, they reached a settlement agreement and read the terms of that settlement into the record. Then, assisted by the trial court, the parties discussed certain other issues. The court orally ruled on various points in contention and entered the Original Judgment.
The Original Judgment generally reflected the parties’ agreement. Former Husband was to purchase Former Wife’s fifty percent interest in the capital stock of Apex at a set amount. Various parcels of marital property, including the marital home, were to be sold, with Former Wife receiving all of the proceeds. Former Husband’s fifty percent interest in those properties would be set off against the purchase price for Former Wife’s Apex stock. In addition, the court added a paragraph to the Original Judgment, deferring delivery of the stock certificates until the marital home sold.[1] This paragraph was not addressed by the parties’ stipulation, and the record does not reflect that it was requested by either party.
The Original Judgment anticipated that Former Wife would earn a net income of $10,575 per month in investments once she received the monies from the sale of the marital properties. Until such time, she was temporarily awarded $2,500 in alimony per week.[2] Based on the parties’ “lavish” lifestyle during the marriage, the trial court found that Former Wife had an additional need for permanent monthly alimony of $4,400. The payment of that amount was to commence one week after the sale of the marital home. In the meantime, Former Husband was to pay Former Wife $1,500 per month in addition to the $2,500 per week. Additionally, in its oral pronouncement, the court ruled: “Until the sale of the marital home [Former Husband] and [Former Wife] will each be fifty percent owners of Apex; until the sale of the marital home [Former Wife] will still receive Twenty-Five Hundred Dollars [sic] week.” The interpretation of this statement is at the heart of this appeal.
Unfortunately, the timing of the parties’ divorce coincided with the recent recession and housing market crash. Although the parties and the court anticipated a quick sale of the marital home, it became a three-year ordeal. Former Wife received Former Husband’s share of the proceeds from the sale of the properties, but there was an approximately one-million-dollar shortfall, which is currently being paid at the rate of roughly $14,000 per month.
Just before the marital home sold in 2009, Former Wife, for the first time, claimed that she was entitled not just to the monies as set forth above, but also to one-half of all distributions made by Apex in the preceding three years. Despite the fact that the Original Judgment clearly labeled various monetary awards as alimony, Former Wife took the position that they were, instead, corporate distributions. In support of her argument, Former Wife noted that Former Husband had been utilizing accounting practices that made it appear that her income from Apex was significantly more than she was actually *1051 receiving in distributions. These practices exposed Former Wife to a large tax liability.[3] Nevertheless, the language deeming the payments alimony was agreed upon by the parties. We find the trial court erred to the extent it reclassified the temporary alimony payments as corporate distributions. See McCann v. Walker, 852 So.2d 366, 367 (Fla. 5th DCA 2003) (holding that unambiguous language in a final judgment must be given its literal meaning).
Likewise, the trial court erred in granting Former Wife’s motion to compel equal distributions from Apex from the time of entry of the Original Judgment until the sale of the marital home. This award totaled $923,739.99, plus interest.[4] This issue involves the construction of terms in the Original Judgment, which we review de novo. See Shinitzky v. Shinitzky, 82 So.3d 1010 (Fla. 4th DCA 2011); Muir v. Muir, 925 So.2d 356 (Fla. 5th DCA 2006).
It is well-settled that shareholders of subchapter S corporations may agree to unequal payment of dividends or distributions, which is precisely what the parties did here. See Little v. Caswell-Doyle-Jones Corp., 305 So.2d 842 (Fla. 1st DCA 1975). An exchange between the parties’ attorneys, which occurred on the record, clearly reflected the parties’ agreement that Former Husband would receive Apex as his separate property, and this was part and parcel of the overall equitable distribution scheme. Specifically, Former Husband’s counsel stated: “If we value [Apex] at five million dollars and we put it all on [Former Husband’s] side of the ledger for distribution purposes, that leaves [Former Husband] indebted to [Former Wife] in the amount of two million five hundred thousand dollars.” Former Wife’s counsel expressed no disagreement with that disposition.
Former Wife relies on Zold v. Zold, 880 So.2d 779 (Fla. 5th DCA 2004), affirmed in part, vacated in part, 911 So.2d 1222 (Fla.2005), to support the order requiring payment of corporate distributions. In Zold, the court was required to determine the husband’s available monthly income from a subchapter S corporation for purposes of paying support. The court noted that “[c]ourt ordered obligations in marital litigation should not place an ex-marital partner in the position of having to breach a corporate fiduciary obligation .Id. at 781. Zold, however, is distinguishable because it did not involve a marital settlement agreement, equitable distribution, or an agreement between the shareholders. Additionally, the other shareholder in Zold — to whom the husband owed a fiduciary duty — was a third party rather than the other spouse. The trial court’s reliance on Zold was therefore misplaced.
Unlike in Zold, the parties’ partial settlement agreement and the Original Judgment established that Former Wife would no longer receive corporate distributions but, instead, Former Husband would buy out her interest. The trial court’s addition of a term stating that Former Wife shall retain “a secured interest” was not intended to alter the agreed-upon ownership structure of Apex; rather, it was a method of securing payment based on the agreed-upon terms. Former Wife understood that a firm price had been set for the purchase of her share of the corporation.
Moreover, at no time during the three-year period between the entry of the Original Judgment and the sale of the marital home did Former Wife attempt to partici *1052 pate in the running of the corporation. The dissent’s dismissal of this fact notwithstanding, in addition, at no time during that three-year period did she ever demand additional corporate distributions. These facts weigh heavily in favor of finding that the agreement did not contemplate Former Wife maintaining an ownership interest in Apex during that three-year period. Accordingly, we reverse the 2012 Order to the extent it required payment of corporate distributions.
Lastly, we find that the trial court erred in awarding Former Wife attorney’s and expert witness fees because Former Wife had ample means to obtain counsel and experts. See Morris v. Morris, 743 So.2d 81, 82 (Fla. 5th DCA 1999) (“[A]n award of attorney’s fees ... is improper where both parties have ample means to obtain competent counsel, and an equitable distribution of the marital assets has already been affected outside the award of fees.”). She possessed a net worth of almost three million dollars and received more than $130,000 in annual income. Furthermore, Former Wife never argued that she had a need for an award of attorney’s fees, nor did she present evidence of such a need. Rather, she focused her argument on the disparity between the parties’ assets, which is not the correct standard. See Arena v. Arena, 103 So.3d 1044,1046 (Fla. 2d DCA 2013) (“[T]he trial court cannot award fees based solely on disparity of income.”). Therefore, we reverse the portion of the 2012 Order that granted Former Wife’s post-judgment attorney’s fees, temporary appellate attorney’s fees, and expert witness fees.
REVERSED.
BERGER, J., concurs.
WALLIS, J., concurs in part, dissents in part, with opinion.

. The paragraph read: "Upon the sale of the marital home, the Wife shall transfer all of her shares in Apex to the Husband and retain a secured, interest in the stock until the balance of what the Husband owes the Wife in the equitable distribution is paid in full.” (Emphasis added).

. The after-tax $2,500 weekly award closely equates to the $10,575 monthly award.

. Former Husband agreed to pay this tax liability.

. After interest, the award totaled $1,215,862.03, with $300,000 payable within ninety days, and the remainder paid at $20,000 per month.