# Third District Court of Appeal

**State of Florida**

Opinion filed March 25, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1909
Lower Tribunal No. 12-15828
_____

**S.L. Wade,**
Appellant,

vs.

**D.T. Wade,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, George A. Sarduy, Judge.

Lisa Marie Macci, for appellant.

Evan R. Marks and Carolyn W. West, for appellee.

Before WELLS, SALTER and SCALES, JJ.

SALTER, J.

The Mother, S.L. Wade, appeals a final post-judgment order on time-sharing and custody regarding the parties' two minor children, contending that the order

contradicts and impermissibly modifies the terms of their 102-page final custody judgment ("FCJ") entered in 2011 by the Circuit Court of Cook County, Illinois, in the parties' dissolution of marriage proceeding. We affirm. In doing so, however, we caution counsel regarding several of the email exchanges in this record, and we encourage them to re-read the parenting coordination provisions of the FCJ.

The Motions, Hearing, and Record

The FCJ, which followed a 38-day trial, was domesticated and became an enforceable Florida judgment in 2012. In accordance with the terms of the Uniform Child Custody Jurisdiction Enforcement Act, Florida was then declared to be the home state, and the Illinois court relinquished jurisdiction over the children to the Miami-Dade Circuit Court. The Mother continued to reside in Illinois, while the appellee/Father and children reside in Miami.

The issues raised by the parties in 2014 centered on carefully-crafted, detailed provisions regarding: the children's weekend, holiday, and school vacation visitation days; advance notice and travel arrangements for the children to facilitate visitation; and makeup days when necessitated by the Father's professional schedule or warranted by a party's violation of the provisions.

Email communications between counsel intended to schedule the summer 2014 time-sharing blocks (alternating two week blocks, based on several factors including the last day of the children's school year and the resumption of school in

2

August) became abrasive and accusatory.[1]  The Mother then engaged in a series of untimely and conflicting demands, as well as non-adherence to previously-agreed pickup arrangements.

The parties filed cross-motions for the trial court's intervention (including requests for makeup visitation days, attorney's fees, and other sanctions).  The trial court conducted an evidentiary hearing on July 3, 2014, with the parties and counsel present.  A few days later, the trial court entered an order on the parties' cross-motions, and this appeal followed.  The order allocated the rest of the summer days available through August 26th between the parties, but did not award any makeup days to the Mother for the available weekend and vacation days between Mother's Day (her last visitation) and July 3rd.  The order also imposed amended mandatory written advance notice requirements for exercising time-sharing and for delivery of an itinerary.

---

[1]  As but one example, on May 29, 2014, the Father's attorney emailed a proposed summer visitation schedule with a request to confirm the schedule.  The sixth two-week block, which would have been assigned to the Mother, was shown to end August 31st, a date well after most public and private school calendars begin in Miami-Dade County (the FCJ required the return of the children five days before the resumption of school).  When the Mother's attorney emailed a question thirty minutes later in response, "When does school begin?," the Father's counsel emailed a reply fifteen minutes later, "Call the school."  At another juncture, the Mother's counsel questioned whether the Father was refusing to pay for plane tickets, though making millions of dollars per year, in order to "burn twice as much money in attorney's fees out of spite and hatred for the mother."

<u>Analysis</u>

The trial court aptly observed that the "lack of certainty in time-sharing is harmful to the children." But for whatever reason, counsel for the parties disregarded the threshold mechanism established by the FCJ for assisting communication and pretermitting skirmishes by email. The domesticated, highly-detailed FCJ incorporated a requirement for a parenting coordinator. Paragraph 9, pages 92 and 93, specified:

> 9. PARENTING COORDINATOR- Consistent with the Circuit Court of Cook County Rule 13.10, it is in the best interests of the children to appoint a parenting coordinator to assist the parties in communication and to aid in resolving conflicts related to the decision-making and parental access to the minor children. Accordingly, this Court hereby appoints former Judge Karen Shields as the parenting coordinator. Communications with the parenting coordinator shall not be confidential, except as both parties and the parenting coordinator agree.
>
> a. <u>Duties</u>. The parenting coordinator shall have such duties as are enumerated in Cook County Circuit Court Rules 13.10(d)(i)-(xii). In addition, the parenting coordinator shall assist the parties with creation and implementation of a parenting schedule each year and each summer as set forth herein as well as assist the parties with other parenting issues that may arise.
>
> b. <u>Costs</u>. The costs associated with the parenting coordinator shall be determined by the Court hearing the financial aspects of this case. Until such time as there is a trial or agreement reached with respect to the financial issues of this case, [Father] shall be solely responsible for the costs associated with the parenting coordinator.
>
> c. <u>Communication</u>. Both [Father] and [Mother] shall each submit to the parenting coordinator a working e-mail address that shall be the designated e-mail address to be used for communications among

4

> [Father] and [Mother] and the parenting coordinator. [Father] and [Mother] shall be required to check their respective designated e-mail accounts no less than once per day. [Father] and [Mother] shall timely respond to all requests, inquiries and e-mails from the parenting coordinator and shall timely return the parenting coordinator's phone calls.

Cook County Circuit Court Rule 13.10 is similar to Florida's parenting coordination statute[2] and rule, Florida Family Law Rule of Procedure 12.742 and Form 12.984(a). The appointment of a former judge as the parenting coordinator in Illinois in the FCJ, coupled with numerous additional provisions requiring both parties to check for emails from the parenting coordinator daily and to timely return phone calls from her, created a confidential procedure for clearer communication and the attempted resolution of disputes without judicial intervention.

In their briefs here, the parties simply advise us that the Illinois coordinator resigned and a replacement was not appointed in Florida. The record demonstrates that, on the Father's side, nannies were generally given responsibility for the children's travel and scheduling. On the Mother's side, coordination of travel with other family members and friends complicated the scheduling. The Mother also complained that the pendency of an appeal in Illinois regarding the financial aspects of the dissolution limited her ability to travel to exercise her time-sharing rights.

---

[2] § 61.125, Fla. Stat. (2014).

5

The FCJ provisions on time-sharing specified 48-hour advance notice by one party to the other and to the parenting coordinator, except in case of emergency, (a) if the children would not be available to the Mother for otherwise-scheduled time-sharing, or (b) if the Mother "is unavailable to exercise her parenting time." Under either circumstance, the Mother would be entitled to "make-up parenting time." The trial court modified these provisions to provide more advance notice because of problems encountered in arranging airline tickets and in confirming pickup dates and return dates. The trial court did not mention, much less modify or eliminate, the provisions of the FCJ relating to the parenting coordinator.

The standard of review in this case is dual: our assessment of whether the trial court "modified" the FCJ within the meaning of section 61.13(3), Florida Statutes (2014), is a de novo review, while the trial court's findings of fact and rulings based on the evidentiary record are reviewed under the abuse of discretion standard. Eldridge v. Eldridge, 147 So. 3d 1048 (Fla. 5th DCA 2014); Valladares v. Junco-Valladares, 30 So. 3d 519 (Fla. 3d DCA 2010).

In the present case, we do not agree with the Mother that the trial court's adjustments to the prior written notice requirements were, as a matter of law, a "modification" of the FCJ within the meaning of section 61.13(3). The procedural aspects and logistics of transportation of the children, and the consequences of

non-compliance, ordinarily are within the discretion of the trial judge. In a high-conflict, high-profile case such as this, the parties and their counsel have the resources to appeal every adjustment of time-sharing procedures based on particular occurrences, but it does not follow that every such adjustment warrants the comprehensive appellate review accorded a substantive post-judgment modification.

Conclusion

We affirm the trial court's order on the parties' cross-motions for instructions and enforcement regarding the summer time-sharing provisions of the FCJ. In doing so, we observe that the parenting coordination provisions of the FCJ remain in force and are available to the parties and counsel should they elect to invoke them. Those provisions plainly were intended to offer a path of confidentiality and non-judicial resolution for the benefit of the children and, by benefiting the children, the parties.

Affirmed.