# Third District Court of Appeal

## State of Florida

Opinion filed January 6, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-265
Lower Tribunal No. 18-29633
_____

**Jesus Garcia,**
Appellant,

vs.

**Juliette Espinosa f/k/a Juliette Espinosa-Garcia,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Spencer J. Multack, Judge.

Sandy T. Fox, P.A., and Sandy T. Fox and Alisha B. Savani, for appellant.

Juliette Espinosa f/k/a Juliette Espinosa-Garcia, in proper person.

Before LOGUE, SCALES and LINDSEY, JJ.

LOGUE, J.

Jesus Garcia, the former husband, appeals the trial court's rulings on alimony and child support to be paid by Juliette Espinosa, the former wife. He also contends

the trial court abused its discretion by failing to adopt the parenting plan submitted by the parties. We agree the trial court erred in its alimony and child support determinations, reverse those rulings, and remand for reconsideration. We also agree the trial court abused its discretion in failing to adopt the parenting plan and remand for reconsideration consistent with the best interest of the children. The partial final judgment of dissolution is affirmed in all other respects.

### FACTS

The parties married in July 2001 and are the parents of two children: a teenaged son, who is one-year shy of attaining majority age, and an eleven-year-old daughter. The former wife filed a petition for dissolution of marriage in December 2018. The trial court entered a partial final judgment dissolving the marriage in January 2020.

The former wife was 42 years old when the marriage was dissolved. She attended law school from 1999 to 2001 and has worked at the Department of Homeland Security, U.S. Citizenship and Immigration Services, for the past 15 years as a supervisor. In her present role as trial attorney at the Department, the former wife earns $113,299.00 in gross income.

The former husband was 61 years old at the time of the dissolution. He worked in construction before being declared disabled by the Social Security Administration in 2016. The former husband became unemployed during the last two years of the

2

marriage. He collects $1,645 in social security disability payments and $800 in dependent benefits for the parties' children, for a total of $2,445 in gross monthly income.

The parties entered into a mediated settlement agreement which resolved the equal distribution of their assets and liabilities. They also executed a parenting plan establishing shared parental responsibility and equal timesharing. The parties agreed the daughter would reside with the former wife and the son with the former husband. Thus, the trial court was asked to determine the issues of alimony and child support and to adopt the parenting plan.

At the bench trial, the former wife testified that the parties lived beyond their means. The marital home was made up of five bedrooms and four bathrooms with a swimming pool and lakefront view. The former husband testified that he contributed $1,600 monthly for the mortgage of the marital home. He also testified, as did the former wife, that he was responsible for taking and picking up the children for school because the former wife's work schedule prevented her from doing so.

In the partial final judgment, the trial court ordered the former wife to pay $200 per month in alimony for seven years. The trial court determined the former wife's child support obligation was $737.60 per month until July 28, 2021, when it drops to $465.65; it further concluded the child support obligation was zero because the former husband receives $800 per month in dependent benefits for the parties'

3

children. The trial court refused to adopt the parenting plan and allowed for further modification by either party based on the best interest of the children.

## DISCUSSION

### a. Alimony

Regarding alimony, the former husband challenges the trial court's decision to award him durational periodic alimony rather than permanent alimony. [1] We agree that the partial final judgment does not include factual findings necessary to explain why the trial court did not award permanent alimony in this case. The type and amount of alimony is ascertained by ten statutory factors enumerated under section 61.08(2), Florida Statutes (2019). [2] Here, the former husband is entitled to an award of alimony because of his age, disability, inability to support himself financially, and the length of the marriage. See Walters v. Walters, 588 So. 2d 47, 48 (Fla. 2d DCA 1991).

---

[1] We review the trial court's alimony award, child support obligation, and final judgment establishing a parenting plan for an abuse of discretion. See Ziruolo v. Ziruolo, 217 So. 3d 1170 (Fla. 1st DCA 2017); Pena v. Rodriguez, 273 So. 3d 237, 239 (Fla. 3d DCA 2019). "An abuse of discretion appears when the record reveals a lack of competent, substantial evidence to sustain the findings of the trial court." Pena, 273 So. 3d at 239–40.

[2] The statute requires the trial court to include findings of fact as to the parties' standard of living established during the marriage, duration of marriage, age and physical and emotional condition, financial resources, including all assets and liabilities distributed to each, contribution to the marriage, all sources of income, and any other factor necessary to do equity and justice between the parties.

Although the trial court correctly determined that the parties' seventeen-year marriage is a long-term marriage in Florida, it did not make an express finding that the former husband is entitled to a presumption in favor of permanent alimony.[3] Nor did it explain how this presumption was rebutted. In awarding durational alimony, the trial court summarily concluded that the former husband "has a need based on his limited ability to work" and that "[n]o other form of alimony is appropriate," however, it "[gave] no guidance as to why permanent periodic alimony is inappropriate in [this] long-term marriage and why durational alimony was awarded, [therefore,] reversal is proper." Gilliland, 266 So. 3d at 868. The final judgment also left unexplained whether the former husband has an "ongoing need for support on a permanent basis." § 61.08(7), Fla. Stat.; Ortiz v. Ortiz, 45 Fla. L. Weekly D1929 (Fla. 3d DCA Aug. 12, 2020) (reversing and remanding trial court's alimony award where "judgment on appeal does not include the reasoning behind the award of alimony").

Unreconciled inconsistencies exist regarding the evident disparate earning capacity of the parties. See § 61.08(2)(j), Fla. Stat. (in determining alimony award, the court shall consider "[a]ny other factor necessary to do equity and justice

---

[3] § 61.08(4), Fla. Stat. ("For purposes of determining alimony, there is a rebuttable presumption that a . . . long-term marriage is a marriage having a duration of 17 years or greater."). "There is a rebuttable presumption that permanent periodic alimony is appropriate after a long-term marriage." Gilliland v. Gilliland, 266 So. 3d 866, 868 (Fla. 5th DCA 2019) (citation omitted).

between the parties"); Gilliland, 266 So. 3d at 868 ("[T]he disparate earning capacity of the parties is a significant factor in deciding whether permanent alimony is warranted." (citations omitted)).[4] Aside from asserting that the parties' marital home "was more than the [parties] could afford," the trial court did not make any specific factual finding on the couple's standard of living established during the marriage as required by the statute. See Quinones v. Quinones, 84 So. 3d 1101, 1105 (Fla. 3d DCA 2012) ("Consideration of standard of living is to ensure that one spouse is not 'shortchanged.'" (quoting Canakaris v. Canakaris, 382 So. 2d 1197, 1204 (Fla. 1980))).

Also, in considering "services rendered in homemaking, child care, education, and career building of the other party," section 61.08(2)(f), Florida Statutes, the partial final judgment neither addresses nor explains the evidence indicating that the former husband contributed $1,600 monthly for the mortgage of the marital home before the parties separated. Likewise, the partial final judgment is silent regarding the parties' division of household labor which required the former husband to

---

[4] An example of the parties' income disparity is evident in their living arrangements after separation. At the time of trial, the former wife was renting a three-bedroom, two-bathroom townhome for $2,200 per month. Since her live-in boyfriend contributes $500 per month for the rent, she is only responsible for $1,700. In contrast, the former husband was temporarily renting an efficiency with one bedroom and one bath for $850 per month which is half the amount the former wife pays for rent.

routinely drop off and pick up the children from school to prevent interference with the former wife's work responsibilities, including working night and weekend hours.

Next, the partial final judgment does not include the requisite factual findings to explain why alimony was limited to $200 per month. In this regard, the final judgment does not address or reconcile the inconsistent evidence regarding the former wife's income, expenses, and liabilities.[5] Additionally, the former wife testified that she received $500 per month from her live-in boyfriend at the time of trial. It is proper for the trial court to consider such circumstance in determining the overall expenses of the former wife, the appropriate award of alimony, and her ability to pay. See Walters, 588 So. 2d at 48 (observing contribution of $300 per week by boyfriend cohabiting with wife for household is "proper" for trial court's consideration in determining the overall needs of the wife). Here, although the boyfriend's monthly rent contribution was recognized by the trial court in its partial final judgment, the amount was not included in the former wife's financial affidavit to calculate her monthly expenses.

_____

[5] For example, based on her amended financial affidavit and testimony, the former wife earned $113,299.00 in gross income for 2018, which is roughly $9,441.00 per month. However, in the same page of the financial affidavit, she lists $8,686.40 as her total monthly gross income, a $754.60 monthly difference in gross earnings that went unaccounted for in the trial court's calculation of alimony awarded to the former husband. For expenses, the former wife lists a $250 monthly car payment twice in her amended financial affidavit: first under "Automobile" and also under "Monthly Expenses to Creditors." The final judgment appears to have relied upon this duplicate report of expenses.

7

These unreconciled discrepancies in the former wife's finances reflect that the alimony award is not supported by requisite fact findings. See French v. French, 12 So. 3d 278, 279–80 (Fla. 5th DCA 2009) ("Once discovered, the errors required the trial court to conclude that the . . . determination of the amount of expenses assigned to the former wife was not supported by competent evidence."). Similar unreconciled inconsistencies exist regarding the relative treatment of the former wife's and former husband's debts and the wife's voluntary contributions to personal savings.[6]

### b. Child Support

"A trial court determines the amount of child support a party owes by utilizing the guidelines set forth in [section] 61.30, Florida Statutes." Ziruolo, 217 So. 3d at 1172. Because the trial court failed to apply these child support guidelines, we reverse and remand for reconsideration of the proper amount of support owed.

The trial court must determine the net income of each parent pursuant to section 61.30, and it must include these findings in the final judgment. This requirement stems from the "well-established rule that '[c]hild support awards must

---

[6] See Geoghegan v. Geoghegan, 969 So. 2d 482, 486 (Fla. 5th DCA 2007) (holding trial court should have considered including income earned by husband that was annually contributed by him to his 401K plan, retirement plan, or medical savings account, for purpose of making ability-to-pay alimony calculation because contributions were voluntary and reduced apparent annual income available to husband).

be based on competent, substantial evidence of a party's net income.'" Van Exter v. Diodonet-Molina, 152 So. 3d 699, 701 (Fla. 3d DCA 2014) (quoting Hoffman v. Hoffman, 98 So. 3d 196, 197 (Fla. 2d DCA 2012)). "The net income of each parent is then combined to determine the minimum amount of child support needed." Id. at 701 n.2 (citing § 61.30(6), Fla. Stat.). "If the trial court fails to make adequate findings, we are required to remand for determination of child support." Id. at 701 (citing cases); see also Foster v. Chong, 254 So. 3d 641, 642 (Fla. 3d DCA 2018) ("The trial court made no written or oral findings to describe how it arrived at [the] child support obligation, and therefore, the record is unclear as to whether this amount comports with the allocation requirements of chapter 61 of the Florida Statutes. As a result, we are unable to conclude that the child support award . . . is supported by competent substantial evidence and are compelled to reverse.").

First, the trial court erred by calculating the child support obligation based on the parties' gross, rather than net, income. J.A.D. v. K.M.A., 264 So. 3d 1080, 1083 (Fla. 2d DCA 2019) ("The trial court erred by failing to make specific findings concerning each parent's net monthly income and relying only on each parent's gross monthly income . . . . Because the guidelines are based on the parents' combined net income and there is an absence of findings as to same in the appellate record, this court cannot conduct a meaningful appellate review of the child support award . . . ." (emphasis in original)); Aguirre v. Aguirre, 985 So. 2d 1203, 1207 (Fla.

4th DCA 2008) ("A final judgment is facially erroneous, requiring remand, where it does not make any findings as to the net income of each party as a starting point for calculating child support or explain how the calculation was performed.") (citation omitted).

Second, the trial court determined the former wife's child support obligation is $737.60 per month until July 28, 2021, when it falls to $465.65. But there is no written explanation, or oral finding in the trial transcript, as to how the trial court reached these numbers. Likewise, there is no explanation as to why the obligation decreases after July 28, 2021, which is likely an error.[7] There is also no child support guidelines worksheet filed by the trial court to conduct a meaningful appellate review of the award. See J.A.D., 264 So. 3d at 1083 ("Additionally, the trial court did not include in the final judgment a child support guidelines worksheet. This, too, was error."). Because the trial court failed to make specific findings as to the combined net income (with correct figures for the former wife's income as previously discussed), and to include a child support guidelines worksheet, we

---

[7] The parties were married on July 28, 2001. The record shows the parties' son turns eighteen years old in September 2021. After this date, the parties are not required by law to financially support their son unless he becomes disabled or is still in high school with a reasonable expectation of graduation before the age of nineteen. § 61.13(1)(a)(1)(a), Fla. Stat. (2019).

reverse the child support determination and remand for reconsideration as to the proper amount of support owed.[8]

Lastly, we note the trial court erred by ordering that "[a]ny out of pocket or supplemental cost shall be shared by the parties equally." This ruling is contrary to the clear directive under section 61.30(8), Florida Statutes, which provides that such medical expenses "shall be added to the basic obligation unless these expenses have been ordered to be separately paid on a percentage basis." It is unclear from the partial final judgment whether the trial court deducted the health insurance paid by the former wife, through her payroll deductions, from her child support obligation, and whether the trial court added the uncovered medical expenses to the basic obligation of both parties. On remand, the trial court shall clarify whether these expenses are included in the basic child support amount or it shall conform these expenses with section 61.30(8) and provide for such amount proportionate to the parties' income. See Forrest v. Ron, 821 So. 2d 1163, 1168 (Fla. 3d DCA 2002)

---

[8] There is an added wrinkle in the child support calculation since the former husband receives social security dependent benefits on behalf of the children. "'[W]hen a parent is receiving social security . . . and, as a result, his or her children receive dependent benefits, the total benefits received by . . . that parent are attributed to the . . . parent as income in the child support guideline calculation.'" Valladares v. Junco-Valladares, 30 So. 3d 519, 524–25 (Fla. 3d DCA 2010) (quoting Sealander v. Sealander, 789 So. 2d 401, 403 (Fla. 4th DCA 2001)). Thus, the $800 in dependent benefits the former husband receives should be included as part of his income for purposes of calculating the child support obligation. This was correctly done by the trial court.

11

(reversing for clarification where trial court "ordered each parent to pay 50% of the child's uncovered medical expenses instead of a proportionate amount based on their income").

### c. *Parenting Plan*

Prior to trial, the parties executed and filed their parenting plan which was to take effect on January 1, 2020. The parties, represented by counsel, initialed each page of the plan detailing the parties' agreement to shared parental responsibility, timesharing, school and holiday scheduling, transportation, and education expenses for their children. At the bench trial, the trial court orally pronounced that it would ratify the parenting plan. Nevertheless, in the partial final judgment, the trial court declared the "Parenting Plan has not been finalized and will require a future court date. Either party may file a motion to modify the existing agreement, which has not been ratified by the Court[.]"

It is a "well-established principle that a trial court's oral pronouncement controls over its written order." Cancino v. Cancino, 273 So. 3d 122, 127 (Fla. 3d DCA 2019) (citing cases). The trial court abused its discretion in failing to review and approve the parenting plan as it had orally pronounced twice at the bench trial. On remand, the trial court, in keeping with the statutory mandate that "the best interest of the child[ren] shall be the primary consideration," section 61.13(3),

12

Florida Statutes, shall review and adopt the parenting plan to conform the final judgment with its oral pronouncements.

For these reasons, we reverse the alimony and child support determinations and remand to the trial court for reconsideration in accordance with this opinion. We also reverse the inconsistent ruling on the parenting plan and remand to the trial court for review and adoption of the plan in accordance with the best interest of the children. The partial final judgment is affirmed in all other respects.

Affirmed in part, reversed in part, and remanded with instructions.